# DECISIONS

OF THE

# SUPREME JUDICIAL COURT

OF

## MASSACHUSETTS

---

JAMES ALLAN *vs.* ESSANEE, INCORPORATED.

Hampden.    January 8, 1941. — April 7, 1941.

Present: FIELD, C.J., DONAHUE, LUMMUS, COX, & RONAN, JJ.

*Landlord and Tenant,* Snow and ice.  *Negligence,*  One owning or controlling real estate.

A finding that the landlord of an apartment building had failed to use reasonable care to keep an entrance step clear of snow and ice or to sand it was not warranted by evidence merely of some snow two days before a tenant fell on ice on the step early in the morning, and of slippery sidewalks the day before, and of a thawing condition the evening before, where there was no direct evidence of any snow or ice on the step during the two days before the fall.

TORT.   Writ in the Superior Court dated June 2, 1937.

Before *Broadhurst,* J., a verdict for the plaintiff in the sum of $8,000 was returned.

*E. Hutchings,* for the defendant.

*J. McN. Holmes,* for the plaintiff.

Cox, J.   The plaintiff, a tenant at will of the defendant in its twelve-apartment building in Springfield, was injured at 6:30 A.M. on Tuesday, January 19, 1937, when, as he was leaving the building by the common exit, he slipped on a ridge of ice on the outside cement step.   The defend-

ant seasonably excepted to the denial of its motion for a directed verdict and also to the denial of its motion for a verdict on leave reserved. The jury found for the plaintiff.

The step on which the plaintiff fell was about six feet long and extended twenty-two inches from the front of the building. Directly over the doorway there was a steep, sloping, shingled canopy or shield extending twelve inches from the wall of the building and along "substantially the entire" length of the step. The method of construction and state of repair of the doorway, step and canopy were the same when the plaintiff fell as they were when his tenancy began in October, 1931, and the doorway, step and canopy were not out of repair at any time during that period.

The plaintiff testified that on the step where he fell there was a ridge of ice about five inches wide at its base and one and one half inches high; that it extended the entire length of the step, was about twelve inches out from the wall of the building and was directly under the outer edge of the canopy; and that the top of the ridge was irregular, "some places a little higher than others." The only other evidence as to the ice on the step came from two witnesses, one of whom testified that it was about half way between the door and the outside of the step, about an inch and a half in height, irregular and humpy at the top, and that its base was about five inches wide. The other testified that at about 10:15 A.M. on the day of the injury, she noticed that the step was covered with ice and that there was a ridge of about an inch and one half or two inches of ice extending along the middle of the step and frozen to it; and that its top surface was irregular.

We assume, without deciding, that it could have been found from evidence which need not be recited that, by virtue of an implied term of the contract of letting, the defendant had undertaken to use reasonable care to keep the step clear of snow and ice, or, at least, to sand it. See *Nash* v. *Webber*, 204 Mass. 419, 424, 425; *Erickson* v. *Buckley*, 230 Mass. 467; *Bell* v. *Siegel*, 242 Mass. 380. Compare *O'Donoughue* v. *Moors*, 208 Mass. 473; *Boulton* v.

*Dorrington*, 302 Mass. 407. On the question of the defendant's negligence the jury was instructed that the plaintiff, in order to recover, was required to show that the accumulation on the step was there because of the defendant's failure to discharge a self-imposed duty to remove it or to guard against it, and also that it had been there long enough so that the defendant had had a reasonable opportunity to discover its presence and to remove it or to guard against injury from it in any reasonable way; that in the absence of a special undertaking, of which there was no evidence, the defendant was not required to change the construction of the premises so that snow or ice would be less likely to accumulate on the step; and that the overhang of the canopy did not impose any obligation on the defendant.

The only evidence, direct or inferential, in addition to that already narrated, as to how or when the ice came to be on the step was from the plaintiff and two other witnesses. The plaintiff testified that on Sunday, two days before his injury, it "snowed"; that it was freezing on Monday; that he thought it turned to a thaw on Monday evening; that he remembered there was a slight thaw between Sunday and Tuesday morning when he fell, "which thaw he thought was Monday night, and that there was slush on Monday night when he returned home about six o'clock." He also testified that immediately after he fell he went to his work and walked in the roadway "because it was so slippery on the sidewalks"; that at that time he noticed there was a thin skim of ice over the brick walk leading from the step to the street. The plaintiff's wife testified that there was "snow and sleet" on the Sunday preceding the injury; that it was foggy on Monday morning and evening; that on Tuesday morning when she went out, at about eight o'clock, the streets were "mushy and a little slippery, it was slightly melted and yet slippery and that the sidewalks in that vicinity were slippery." The third witness testified that on Tuesday morning when she left the house at 10:15 there were patches of ice and water in sections of the public street; that in the late afternoon before the day of the accident it was slippery and the side-

walks were slippery; that she did not remember the weather at any time within a day or so immediately before the morning of the injury except that it snowed and sleeted on Sunday; and that she did not remember whether it was cold between Sunday and the morning of the injury.

It appears that this witness also testified that she left the house about four o'clock on Monday afternoon and returned about 5:15. The bill of exceptions then states: "The following testimony was then received, subject to the defendant's objection and exception"; and this is followed by what appears to be a precise transcript from the stenographic record, the substance of which is here given. The witness, who was called by the plaintiff, was asked by his attorney if she observed anything on the step when she went out or in on Monday afternoon, but she was not permitted to answer. The trial judge thereupon said that he was admitting the question "on the implied promise you made by offering to show that the weather conditions hadn't changed between the time she is telling about and the time of the accident." Whereupon counsel for the plaintiff stated that he offered to show the length of time that the accumulation of ice was there, as bearing upon notice. The judge then said: "Do you offer to show also that the ice that was there the morning of the accident was the same ice that she saw there the day before?" Counsel replied: "I can only go this far in proving that, to show . . . the general appearance of the ice itself, as being the same." The judge then said: "You can ask her whether so far as she knows anybody removed any ice from the step after the time she went out on the afternoon before." The witness was then asked: "So far as you know . . . was any ice removed from the step between the time you went out the afternoon before and the following morning at 10:15?" She answered: "Not as far as I know."

It may be that the trial judge assumed that the witness, if permitted, could testify as to ice upon the step on the afternoon before the plaintiff fell. The reference by him to the "implied promise" that had been made seems to indicate that there may have been a conference at the bench

before the witness was interrogated as to her observations on Monday afternoon. But the fact remains that upon this record she never answered that question, and counsel for the plaintiff did not proceed in accordance with the condition imposed by the judge as to permitting her to answer, that is, by showing that the weather conditions had not changed. Moreover, it seems apparent that in the end the witness was not permitted to answer that she saw any ice at all on the step on Monday, the sum and substance of the episode being that she was finally allowed to testify as to her knowledge or lack of knowledge as to the removal of any ice from the step. We think it is not open on this record to assume that there may have been any direct testimony as to the presence of any ice on the step except on Tuesday morning when the plaintiff fell. The defendant could do no more than it did to save its rights, and, in this court, it presses the point that there was no evidence as to how long the ice had been on the step and that the witness, whose testimony has just been referred to, did not testify as to what she observed on Monday afternoon. The question is whether the jury was warranted in finding that the ice on which the plaintiff slipped had been upon the step long enough so that the defendant, in the exercise of reasonable diligence, should have discovered it, removed it, or, at least, guarded against injury from it, and we are of opinion that it was not.

Although it snowed and there was sleet on Sunday, there is nothing to show the duration of the storm, if it was a storm, the quantity of the snow or sleet that fell, and there is no reference to the presence of snow as such anywhere thereafter. The plaintiff himself testified that there was slush Monday night at about six o'clock and that there was a slight thaw which he thought was on that night.

The building in question is three stories in height, and, from the photograph that was in evidence, it appears that it has a flat roof with a substantial overhang. If there was snow on the edge of the roof, as commonly is the case in our winters, and the snow immediately over the doorway

should melt, it is apparent that the drip would reach the step in substantially the place where the ice is said to have formed. Two facts stand out, (1) that there was snow and sleet on Sunday, and (2) that there was ice on the step on Tuesday morning as early as 6:30. There is no direct evidence of any snow or ice on the step between Sunday and Tuesday morning.

We are not here dealing with comparatively fixed conditions shown to be existent at a given time from which some inferences as to a prior existence may be permissible. See *Beacon Trust Co.* v. *Wright*, 288 Mass. 1, 5, and cases cited. Even the rule that a usual and habitual state of things, dependent upon natural causes and constantly producing the same results, has a legitimate tendency to show that the results were in existence at a particular time, has its limitations. "Such evidence, however, would not be competent for the direct purpose of showing the shape or dimensions of the ridges of ice on the day when the accident occurred, unless it was so near in point of time, or accompanied with such other evidence of temperature and climate in the mean time, as to furnish a presumption that its condition remained unchanged." *Berrenberg* v. *Boston*, 137 Mass. 231, 233. Even if we assume that the ice on the step, as described, would require some time to form, there would then be the question as to the length of that time. We are of opinion that the record affords no satisfactory answer to this question. See *Manning* v. *Smith*, 299 Mass. 318, 320; *Collins* v. *Collins*, 301 Mass. 151, 152, and cases cited. The case is distinguishable from cases like *Commonwealth* v. *Arone*, 265 Mass. 128, 130.

It did not appear that the defendant knew the ice was there. Accordingly, the plaintiff was bound to show, as a part of his case, that it had been on the step long enough so that the defendant, in the exercise of reasonable diligence, should have known it was there. This he was not required to do to a mathematical certainty, nor to exclude other possible factors if the essential fact was fairly established. But he was bound to introduce enough evidence to remove the existence of the essential fact from the realm

of speculation and to give it a solid foundation. Several conjectures may be indulged in as to the source of the ice on the step, what caused it to be there and when it was formed. What inferences are to be drawn in a given matter depends upon the facts, the circumstances and the teachings of experience with regard to them. *Mucha* v. *Northeastern Crushed Stone Co. Inc.* 307 Mass. 592, 597, and cases cited. In the case at bar, however, we are of opinion that the evidence left the crucial matter now under consideration in such a state of uncertainty and conjecture that the jury were not warranted in finding as they must have, and that there was error in the denial of the defendant's motion for a directed verdict.

It is unnecessary to consider other exceptions of the defendant.

*Exceptions sustained.*
*Judgment for the defendant.*