ANNA B. WARDWELL *vs.* GEORGE H. TAYLOR CO.[1]

Middlesex.    October 6, 1955. — December 5, 1955.

Present: QUA, C.J., RONAN, WILKINS, SPALDING, & COUNIHAN, JJ.

*Negligence*, Steaming machine.    *Evidence*, Matter of conjecture.

Evidence in an action of tort merely that after a kerosene wallpaper steaming machine hired from the defendant and used in the plaintiff's house had worked properly for some minutes it caught on fire and damage to the plaintiff's property occurred, and that after the fire one of the parts of the machine was not working properly, "possibly" because of dirt, without evidence that there was dirt in that part at any time or that the machine was otherwise defective when rented by the defendant, left the cause of the fire and fault of the defendant wholly matters of conjecture and did not warrant recovery by the plaintiff.

CONTRACT OR TORT.    Writ in the Fourth District Court of Eastern Middlesex dated February 27, 1950.

Upon removal to the Superior Court, the action was tried before *Beaudreau*, J.

*William J. Conboy*, for the defendant.

*Richard J. Cotter, Jr.*, for the plaintiff.

COUNIHAN, J.    This is an action of tort to recover for damage to a dwelling house and to personal property resulting from a fire alleged to have been caused by the negligence of the defendant.    The declaration was in two counts, one in tort and one in contract.    The count in contract was waived in open court and the count in tort went to the jury who found for the plaintiff.    The action comes here upon an exception of the defendant to the denial of its motion for a directed verdict, and to the denial of its motion to strike out the testimony of the chief of the fire department.    Because we conclude that there was error in the denial of the

---

[1] Fred Turilli was originally a codefendant.    On motion the judge directed that the jury return a verdict for him and no exception was taken to that order.

motion for a directed verdict we do not consider other matters argued by the defendant.

The bill of exceptions is not entirely clear but from it we infer that the evidence in its aspects most favorable to the plaintiff was as follows. Fred Turilli was engaged by the plaintiff to remove the wallpaper in the living room of her dwelling house. He hired one Publisi to do this work. Publisi owned a kerosene wallpaper steaming machine which he had used frequently in the removal of wallpaper. Because his machine was not working properly, with Turilli he went to the place of business of the defendant where Turilli rented a machine similar to that owned by Publisi. This machine was in two parts, a tank and a boiler with a hose attached to it. A sketch of the machine was in evidence but it was not certified for use before us. To make this machine workable for the purpose of removing wallpaper, kerosene is placed in the tank and air pressure is applied to it through a filler cap. A filler cap was in evidence as an exhibit but it also was not certified for use before us. The air which is admitted to the tank, at what point we do not know, is supposed to build up a pressure of approximately twenty-five pounds to force the kerosene through a preheated coil, which changes the kerosene from a liquid to a vapor or gas. This vapor or gas is then ignited by the preheated coil. The tank is placed under a boiler which contains water which the lighted vapor or gas turns into steam. The steam comes out through a hose and is applied to the wallpaper to facilitate its removal. The filler cap has a valve with a ball bearing device which permits air to enter the tank under pressure. Once inside the tank the air and kerosene force the ball bearing device into a seat which seals the valve so that no air or kerosene may escape through it. Publisi prepared the machine for operation and ran it fifteen or twenty minutes to get steam up. It is not clear from the record just how he did this, but it did appear that he used alcohol to preheat the coil. He then applied the steam to the wallpaper for a period of fifteen or twenty minutes when he noticed that the machine was on fire. The machine was

"all in flames and the kerosene was coming out of the filler cap valve." Up to that time the machine was "in absolutely good working order." Publisi, who was qualified by the judge as an expert, testified that in his opinion if the ball bearing device in the filler cap was working properly it would put the ball bearing device against a seat in the cap so it would prevent air from coming back through the cap; that if air came through it then it was not working properly; and "that he did not know what was wrong with it but it could be, possibly, the dirt." In his opinion the fire was caused by kerosene which escaped "either by the ball bearing or by the filler cap valve gasket." After the fire the chief of the fire department and a fire captain examined the filler cap after it had been removed from the machine and found that when they blew through the filler cap from the inside, air passed through it. The chief testified that at the scene of the fire "the valve was leaking" when he got there and that he saw "a very fine stream" coming out of the filler cap valve. He had no opinion as to the cause of the fire and he was uncertain as to the reason air came through the filler cap.

We are of opinion that this evidence was insufficient to warrant a finding that the defendant was negligent, and that the action should not have been submitted to the jury. It is true that there was evidence that after the fire the filler cap valve was not working properly and that in the opinion of the expert this condition might *possibly* have been caused by dirt in the filler cap valve. But there was no evidence that there was dirt in the filler cap valve at any time before or after the accident, much less that there was dirt in it when the defendant rented the machine. The evidence that the machine was working properly for a period of thirty to forty minutes before the fire would appear to negate any such probability. The opinion of the expert in this respect is based only on a possibility which we think is not enough to warrant a finding of negligence. "Mere proof of an explosion plus evidence that an explosion could be caused by an improper cleaning of the burner — and no more than

that was shown here — established only that there was a possibility that the burner was not properly cleaned. Verdicts must rest on more solid foundations." *Friese* v. *Boston Consolidated Gas Co.* 324 Mass. 623, 631.

It is as consistent on the evidence in this action to conclude that, if there was any dirt in the valve, it got there because of improper preparation of the machine for operation, or in the operation of the machine in removing the wallpaper, or because of the fire itself as to conclude that there was dirt in the valve when the defendant rented it or that the machine was otherwise defective then. The presence of dirt or other defects at the time the machine was rented is purely speculative and a matter of surmise and conjecture. "The occurrence of an accident, standing alone, is not always evidence of negligence. It may be as consistent with the innocence as with the fault of the person controlling the agency by which the accident happened. When the precise cause is left to conjecture and may be as reasonably attributed to a condition for which no liability attaches as to one for which it does, then a verdict should be directed against the plaintiff." *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 192. *Hill* v. *Iver Johnson Sporting Goods Co.* 188 Mass. 75. *Morrow* v. *Otis,* 251 Mass. 65, 67–68. *Baker* v. *Davis,* 299 Mass. 345, 348. *Allan* v. *Essanee Inc.* 309 Mass. 1, 7. *LeBlanc* v. *Atlantic Building & Supply Co. Inc.* 323 Mass. 702, 706. *Boyle* v. *Cambridge Gas Light Co.* 331 Mass. 56, 63.

*Exceptions sustained.*
*Judgment for the defendant.*