MARGARET M. McLAUGHLIN *vs.* ROBERT BERNSTEIN &
another.[1]

Suffolk.    April 8, 1969. — June 20, 1969.

Present: WILKINS, C.J., SPALDING, CUTTER, KIRK, & SPIEGEL, JJ.

*Negligence,* Wallpaper removal machine, Renter of equipment. *Proximate
Cause. Evidence,* Opinion: expert.

No error appeared in rulings with respect to certain opinion testimony at
the trial of an action for property damage resulting from an explosion
of propane gas being used in connection with a wallpaper removal
machine. [223–224]

Evidence warranted a finding of negligence on the part of a workman who,
while using a wallpaper removal machine to which a tank of propane
gas was attached by a hose, tested for gas leaks with a lighted match,
whereby gas escaping from a rupture of the hose exploded with resul-
tant damage to property. [224]

Evidence warranted a finding that a renter of a wallpaper removal ma-
chine, to which a tank of propane gas was attached by a hose, was
negligent, toward the owner of property damaged by an explosion of
the gas while being used by the hirer, in having failed to properly in-
spect or test the hose for defects and in having failed to inspect a regu-
lator on the tank of gas. [224–225]

In an action by an owner of premises against a renter of a wallpaper re-
moval machine, to which a tank of propane gas was attached by a hose,
for damage to the plaintiff's premises resulting from an explosion of
gas escaping through a rupture in the hose while the equipment was
being used by the hirer, where there was evidence that the rupture of
the hose was brought about either by a weakness in the hose or ab-
normal pressure thereon due to a defect in a regulator on the tank of
gas and that the defendant was negligent in failing to discover either
of such conditions, it was held that the negligence of the defendant
could properly be found to have been a proximate cause of the explo-
sion, although the plaintiff did not prove which of such conditions
brought about the rupture of the hose and negligence of the hirer in
using a lighted match to test the equipment for gas leaks contributed
to the explosion. [225–226]

TORT OR CONTRACT.    Writ in the Superior Court dated
November 14, 1961.

---

[1] Ashmont Supply Co., Inc.

The action was tried before *Moynihan*, J.

*Edward J. Barshak* for Ashmont Supply Co., Inc.

*Leo Sontag* for Bernstein.

*James D. Casey* (*Edward S. Ronan* with him) for the plaintiff.

KIRK, J.   In this action of tort or contract for property damage the plaintiff was awarded damages against the defendant Robert Bernstein under count 1 (tort) and count 4 (contract) and against the defendant Ashmont Supply Co., Inc. (Ashmont) under count 3 (tort).   On each count the verdict was the same amount.   In substance all counts are for negligence.   The case is before us on the defendants' exceptions to the denial of their motions for directed verdicts and to rulings on evidence.

We state the evidence.   Early in December, 1960, the defendant Robert Bernstein, a painter and decorator for over twenty-five years, agreed, inter alia, to remove wallpaper in parts of the interior of premises owned by the plaintiff McLaughlin at 122 Milton Avenue, Dorchester.   In anticipation of the work he reserved for rental from Ashmont, as he had done many times over the years, a wallpaper removal machine.   The machine is made up of a water tank (with a burner attached to raise steam), a propane gas tank, an eight foot rubber hose that runs from the gas tank to the burner, and a twelve to fifteen inch hose that carries steam from the water tank to a perforated pan which is held against the wallpaper and emits steam to help remove it.   A regulator on the propane gas tank regulates the flow of gas from the tank to the burner which is located beneath the water tank.

On the morning of December 17, 1960, Bernstein got the machine at Ashmont's store, and was told by Ashmont's manager, one Rudnick, "it's already for you."   At the store he checked the fittings and threads to make sure they "weren't threaded."   He knew that the hose was not new; he examined and felt it only for bumps and cuts.   After leaving the store he did not examine it again.   He did not check the regulator.   He knew that the regulator was used

to reduce the pressure of the gas from the time the gas came out of the tank until it went into the hose, and that if something were wrong with the regulator gas would escape. He had no knowledge of the interior workings of the regulator and did not dismantle it. Bernstein knew that if the machine were not used properly there was danger in using it. He was aware that the whole system was under pressure, the water tank and the gas. He knew that gas could escape from the fittings, the hose and the regulator, and that there was danger of catastrophe if gas did escape.

When Bernstein left the store he took with him a tank of propane gas, a highly volatile and dangerous gas. He took the whole machine in his car to the plaintiff's premises. The plaintiff objected to the use of the machine but Bernstein assured her it was perfectly safe. He set up the machine and tested it for leaks by running matches over the fittings. The fittings were tight; no gas leaked. Each time he moved the machine he disconnected the hoses because the water tank was hot. And each time he tested it the same way; i.e., when in position he reconnected the hoses and used the match check. He knew that if there were a leak there would be danger of fire and explosion from his method. He knew that testing with water or soapsuds was a safer method. "During the use of the machine in removing the wallpaper, the hose from the gas tank to the burner was always bent in some fashion."

After finishing the upper hallway of the premises, Bernstein shut off the machine, disconnected the gas hose at the burner and carried the machine to the bottom landing. He reconnected the hose, turned on the valve at the gas tank and regulator, but not at the burner, walked toward the water tank, turned around, and "it seemed like the hose just opened up and I saw a big vapor cloud coming up." The middle of the hose was ruptured. He did not try to turn off the gas. There was an explosion. Bernstein denied that he lighted a match or that he was smoking. He testified that other than the gas the only combustibles in the hallway were the matches he used in testing. After the explosion, the

pan, the hoses and the regulator of the machine were missing.

Ashmont maintained and rented these machines as part of its business to anyone who wanted to rent them on a daily rental fee. They were in common use and carried by most hardware stores. Ashmont's manager had no knowledge of the age of the particular machine. No expert or representative of the manufacturer tested them. Before renting he handled and took "a general look at the hoses to see if there were any breaks in them." He was aware of the potential dangers if the machines were not properly used and knew that the regulator and hoses should be in good condition. He did not know how to test a regulator. He could not say if the regulator on the machine had ever been replaced and did not know how long the hose had been in use. If the machine were properly used the hose was not supposed to rupture. He had replacements available. If they appeared worn or if someone complained of smelling gas, primarily if someone complained, he would change them.

An expert testified that the whole machine is a pressurized unit. The gas is under pressure and the water, converted to steam, is under pressure. He examined the remains of the machine which were in Bernstein's possession. The missing parts were the shut-off valve to the burner, the gas hose connecting the burner to the propane gas tank, the regulator (normally attached to the gas tank), the steam hose and the steam pan. The water tank at the top was corroded, a condition which existed prior to the fire. There could be three causes for the escape of the gas: (1) a weak spot in the hose, (2) a defect in the regulator, (3) a leakage of gas at the joints. It was not probable that there was gas leaking from the joints. Even so, the proper way to check for leaks at the joints or connections in this sort of unit when it is connected is to use soapsuds, moisture or water. Minute leaking may be found by checking for bubbles. The use of a match is dangerous and is not as effective to detect leaks.

The two most probable causes of the gas leak were a defect in the regulator or a defect in the hose. A regulator con-

tains a body which allows gas to come in and flow through it and out. It is essentially an automatic valve operated by a diaphragm. The pressure operating upon the diaphragm and the spring opposite the diaphragm within the regulator controls the flow of gas. The diaphragm is made of reinforced rubber and keeps flexing, moving up and down. The constant flexing eventually causes the diaphragm to deteriorate so that there is a failure from cracks which appear. When this occurs, control of the pressure of the gas is lost and there is leakage from the regulator. The weakness or deterioration of a diaphragm can be found only by visual inspection by taking the cap off the regulator. The examination would take ten to fifteen minutes. It is only necessary to remove six or eight screws and lift out the diaphragm of reinforced neoprene and make a visual inspection of it.

Careful visual inspection of the hose would show if it were starting to deteriorate. Nonvisible weaknesses in hoses can be detected by using equipment which is in general use and which is not expensive. Anyone can use it and it takes only ten minutes. If there were a latent defect in the hose, it would rupture under the test.

Propane gas is heavier than air. When it escapes it flows toward the floor. "After the gas escaped, a flame or a spark would be necessary to set off the accumulation of gas." It could be set off by an electric arc, an open flame, or ash, a cigarette or something with actual combustion taking place. "The electric arc could be caused by an open switch but it would have to be down in the area where the gas had concentrated."

The exceptions to rulings on evidence, argued only by Bernstein, may be briefly dealt with. Rudnick, called as a witness by the plaintiff, had testified without objection that he "did not expect the hose to rupture if the machine was being used properly and if the machine were being used properly the hose was not supposed to rupture." After some intervening questions referring to "some explanation or reason for the rupturing," not objected to by Bernstein,

Rudnick was asked, over Bernstein's counsel's objection, and directed to answer the question, "If it's being used properly, the hose is not supposed to rupture, is it?" No ground for objection was stated. The judge could reasonably rule that the jury were entitled to know from Rudnick whether, despite the intervening questions and answers, he adhered to his previously stated opinion. There was no error.

Nor was there error in refusing (a) to strike the testimony of the expert incorporating facts not then specifically before the jury or (b) in admitting his answer to a question concerning the expansion of gas in an area whose precise proportions were not stated. Both rulings were in the discretion of the judge. The infirmities, if any, of the testimony affected its weight rather than its admissibility; and the weight was not tested, as it could have been, by cross-examination. See *Ryan* v. *Fall River Iron Works Co.* 200 Mass. 188, 193–194.

The chief issues arise from the denial of the defendants' separate motions for directed verdicts. The test is whether the evidence viewed in light most favorable to the plaintiff and taking all reasonable inferences favorable to the plaintiff supports the findings of negligence implicit in the jury's verdicts. *Kelly* v. *Railway Exp. Agency, Inc.* 315 Mass. 301, 302. *Randolph* v. *Five Guys from Boston, Inc.* 354 Mass. 730, 731. There was no error.

On the evidence the jury could find that Bernstein was in control of the only means at or near the landing to create the open flame which could ignite the escaping propane gas. Despite his testimony that he did not light a match which caused the explosion, they could infer that he, when the machine was set up in the hallway, followed the same procedure he had consistently used previously and lighted a match to test for gas leaks, resulting in the explosion. The use of a lighted match to test for propane gas leaks could be found to be a negligent act with predictable consequences. The case against Bernstein was rightly submitted to the jury.

On the evidence the jury could find the following facts concerning Ashmont. Despite its knowledge of the potential

danger from a defective regulator or hose in a machine which it rented to others as part of its business, Ashmont failed to make reasonable inspection of the hose for visible defects and failed to make any test for latent defects when there was generally available an inexpensive device which could be used by a person without special training to test for and discover such defects. It likewise failed to make any inspection of the regulator, a simple task which could be easily accomplished. These acts of omission could be found by the jury to be breaches of duty which a lessor of equipment owes to persons upon whose premises the lessor should reasonably anticipate the equipment will be used. *Mitchell* v. *Lonergan,* 285 Mass. 266. *Carter* v. *Yardley & Co. Ltd.* 319 Mass. 92, 96. See Restatement 2d: Torts, §§ 388, 407, 408.

Ashmont is not insulated from liability by the fact that it was not the manufacturer of the machine. "If the chattel is made by a third person, the lessor is required to exercise reasonable care to inspect it before turning it over to the lessee. The minuteness of the inspection required varies with the danger which will be likely to result if the chattel is defective . . . and the length of time during which it has been in the lessor's possession and use." Restatement 2d: Torts, § 408, comment a. In the present case the machine was not new and Rudnick, Ashmont's manager, stated that the machine had not been tested by the manufacturer or an expert for three or four years prior to the fire.

Ashmont argues, nevertheless, that the case against it is fatally weak because, it contends, the cause of the escape of the gas was left to conjecture. The fact that the gas escaped through a rupture of the hose, however, was not left to conjecture. The defendant Bernstein testified to that fact. Based on the expert's testimony the jury could find either that the rupture was due to a weakened condition of the hose which left it unable to withstand normal gas pressure or that the rupture was produced by the introduction into the hose of an abnormal gas pressure because of the defective condition of the regulator. Either one of these conditions could be found to be a probable cause for the escape of the gas

and both reasonably excluded the likelihood of other causes. Either condition, on the evidence, was reasonably discoverable beforehand by Ashmont. There is no requirement of law that the plaintiff point out the exact way an accident happens. The plaintiff sustained her burden if she proved that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause. *Beaver v. Costin,* 352 Mass. 624, 627. The inability of the expert to assign specifically the cause of the rupture does not defeat the plaintiff's case if negligence of the defendant was made out as to both equally probable causes. See *Brumm* v. *Goodall,* 16 Ill. App. 2d 212, 226. *Carlson* v. *Chisholm-Moore Hoist Corp.* 281 F. 2d 766, 770–771 (2d Cir.) cert. den. 364 U. S. 883. That the hose and regulator were unavailable for examination by the expert does not rule out his testimony. Cf. *Congressional Ins. Co.* v. *Ford Motor Co.* 198 Atl. 2d 918, 920 (Ct. App. D. C.).

The fact that Ashmont was not in control of the machine at the time of the explosion does not relieve it of responsibility since the jury could find that any defect in the hose was not caused by Bernstein after Ashmont relinquished control of the machine to him the same morning. See *Flaherty* v. *New York, N.H. & H. R.R.* 337 Mass. 456, 459–462.

The fact that effective causes of the explosion could be attributed to the negligence of both defendants distinguishes the present case from *Wardwell* v. *George H. Taylor Co.* 333 Mass. 302, relied upon by both defendants.

Under familiar principles Bernstein's negligence which contributed to the explosion does not exculpate Ashmont. Ashmont ought to have foreseen that its negligence would be followed by the negligence of another resulting in injury. In this aspect the case resembles *Teasdale* v. *Beacon Oil Co.* 266 Mass. 25, 27–28, and is controlled by that decision. It is not necessary that the precise manner in which the subsequent negligence occurred and contributed to the ultimate harm be foreseeable. See *Martin* v. *Reis,* 344 Mass. 32,

36–37. See also *Lane* v. *Atlantic Works*, 111 Mass. 136, 139–140; *Malloy* v. *Newman*, 310 Mass. 269, 275–276; *Flaherty* v. *New York, N.H. & H. R.R.* 337 Mass. 456, 462.

*Exceptions overruled.*