MICHAEL P. CAREY & another vs. GENERAL MOTORS
CORPORATION.

Worcester. February 7, 1979. — April 4, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, KAPLAN, & WILKINS, JJ.

*Negligence,* Manufacturer of motor vehicle. *Motor Vehicle,* Defect.
   *Evidence,* Expert opinion, Manufacturer's recall letter. *Practice,*
   *Civil,* Instructions to jury. *Damages,* Loss of earning capacity, Inter-
   est. *Interest.*

In a tort action to recover damages for injuries incurred in a motor
   vehicle accident allegedly caused by the negligent design of an
   automobile, evidence by the plaintiffs' expert that one of three
   design defects caused the accident was sufficient to warrant denial
   of the defendant's motions for directed verdicts and for judgment
   notwithstanding the verdict even though the expert could not say
   which of the three defects caused the accident. [739-741]
In a tort action to recover damages for injuries incurred in a motor
   vehicle accident allegedly caused by the negligent design of an
   automobile, there were sufficient facts in evidence on which the
   plaintiffs' expert could base his opinion that one of three design
   defects caused the accident. [741-743]
In a tort action to recover damages for injuries incurred in a motor
   vehicle accident allegedly caused by the negligent design of an
   automobile, there was no error in the judge's instructions permit-
   ting the jury to find against the defendant without a finding that
   the accident was caused by a specific, identifiable defect attributa-
   ble to the defendant's negligence where there was evidence that the
   accident was caused by one of three defects, each as probable as the
   others, and all attributable to the defendant's negligence. [743-744]
In a tort action to recover damages for injuries incurred in a motor
   vehicle accident allegedly caused by a defective idle cam in the
   automobile, there was no error in admitting in evidence a letter
   issued by the defendant subsequent to the date of the accident
   recalling similar automobiles for correction of the defective cam
   where the plaintiffs had independently proved that the defect that
   was the subject matter of the recall existed in their vehicle at the
   time of the accident. [744-746]

In a tort action to recover damages for injuries incurred in a motor
vehicle accident, the judge did not err in denying the defendant's
motion that the clerk be directed not to add interest to the sum
awarded by the jury to one of the plaintiffs to compensate him for
future loss of earning capacity. [746]

TORT. Writ in the Superior Court dated June 1, 1970.
The action was tried before *O'Connor, J.*

The Supreme Judicial Court granted requests for direct
appellate review.

*Patrick F. Brady (Charles F. Barrett* with him) for the
defendant.

*Paul R. Sugarman (W. Thomas Smith* with him) for the
plaintiffs.

HENNESSEY, C.J. In this action of tort the plaintiffs al-
lege that they incurred personal injuries in a motor ve-
hicle accident on June 14, 1968, in South Hadley, Massa-
chusetts, which was caused by the negligent design of an
automobile. The plaintiffs are Michael P. Carey, who was
the owner of the vehicle and the driver at the time of the
accident, and George Langevin, who was a passenger in
the vehicle. The case was originally commenced against
the defendant General Motors Corporation (General Mo-
tors), the manufacturer of the 1968 Chevrolet Corvette
which was the vehicle concerned, and against the dealer
who sold the vehicle to the plaintiff Carey.

The case was tried before a jury in the Superior Court.
At the close of the plaintiffs' evidence, the dealer's motion
for a directed verdict was allowed by agreement of the
parties. The jury returned verdicts for both plaintiffs
against General Motors, and General Motors appealed.
We granted the parties' applications for direct appellate
review.

On June 14, 1968, sometime after 11:30 P.M., the plain-
tiffs left a party in progress at a home in South Hadley.
Both had been drinking at the party, and Langevin was
intoxicated. Carey then owned a 1968 Chevrolet Corvette
automobile which he had purchased in December, 1967.
On the date of the accident the vehicle had been driven

in excess of 10,000 miles. Carey, with Langevin as his passenger, proceeded to drive his vehicle onto Woodbridge Street in South Hadley, and from there to the intersection of Woodbridge and Pearl Streets.

According to Carey's testimony, he had driven to a point about 500 feet from the intersection when he reached the crest of a hill on Woodbridge Street from where he could observe the intersection. He depressed the clutch and down-shifted the manual transmission of his vehicle from fourth to third gear, while at the same time giving the accelerator pedal "a quick little depression" in order to match the engine speed with the vehicle speed. Approximately 400 feet from the point of the accident, he realized that the accelerator pedal was stuck. He kicked at the side of the pedal several times to "get it back up again," and tried to "force it back up." Approximately twenty-five feet from the intersection, when the vehicle had accelerated to a speed of fifty to sixty miles an hour, he stepped on the brakes for the first time, but it was too late to stop the vehicle, which then collided with a tree. The impact was severe, causing the engine to be thrown twenty-five feet from the vehicle and the body of the vehicle to be demolished. Fires occurred at the engine and at the vehicle itself. Both plaintiffs were severely injured.

According to Carey, the stuck throttle condition experienced by him on the night of the accident had occurred on several previous occasions, sometimes while starting and other times while down-shifting.

The defendant alleges error in four respects: (1) The defendant's motions for directed verdicts, and for judgment notwithstanding the verdict, were erroneously denied. (2) The trial judge erred in submitting the case to the jury under a charge which permitted them to find against the defendant without a finding of a specific, identifiable defect which caused the accident and which was attributable to the defendant. (3) The trial judge erred in admitting in evidence the March, 1969, recall letter by the defendant corporation pertaining to the

vehicle model which was involved in the accident. (4) The trial judge erred in refusing to rule, as a matter of law, that should the jury award the plaintiff Langevin a sum to compensate him for future loss of earnings or earning capacity, no interest should be added to such sum; and in denying the defendant's motion, after verdict, to instruct the clerk not to assess interest on the $300,000 which the jury awarded Langevin for loss of future earning capacity. We conclude that there was no error, and we affirm the judgments for the plaintiffs.

1. There was no error in the denial of General Motors' motions for directed verdicts and for judgment notwithstanding the verdict.

The plaintiffs' case against General Motors rested largely on the testimony of a mechanical engineer, one Murray Burnstine. He advanced three theories as to the cause of the accident. The first theory involved a mechanical device on the Carey vehicle's carburetor known as the fast idle cam. Burnstine opined that one probable explanation of the accident was that this plastic cam cracked, separated, and broke into two pieces, and that one piece fell and lodged in a place where it prevented the throttles from closing when the driver removed his foot from the gas pedal. Burnstine's second theory concerned the "secondary lockout system" of the carburetor. It was his opinion that the design of this secondary system was such that it could malfunction and cause continued acceleration even after the driver released his foot from the accelerator pedal. The third theory advanced dealt with a back-up light wire, which passed from the engine compartment of the vehicle and was so routed that it could catch on a moving part of the accelerator control system and prevent the throttle from closing when the driver removed his foot from the gas pedal.

General Motors argues that Burstine's testimony and all the evidence were so speculative as not to warrant submission of the case to the jury, particularly since there was no identification of any one of the three alleged

design defects as the likely cause of the accident. We do not agree. It is true that where, in an automobile product liability case, the precise cause of the accident is left to conjecture, the defendant manufacturer is entitled to a directed verdict. *Maher* v. *General Motors Corp.*, 370 Mass. 231, 234 (1976). *Kennedy* v. *U-Haul Co.*, 360 Mass. 71, 73-74 (1971). *Necktas* v. *General Motors Corp.*, 357 Mass. 546 (1970). However, the plaintiffs sustain their burden by a showing that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause. *McLaughlin* v. *Berstein*, 356 Mass. 219, 226 (1969). An expert's opinion based on facts in evidence is sufficient proof of causation. *Black* v. *Boston Consol. Gas Co.*, 325 Mass. 505 (1950). The plaintiffs are not required to eliminate entirely all possibility that the defendant's conduct was not a cause. It is enough that they introduce evidence from which reasonable men may conclude that it is more probable that the event was caused by the defendant than that it was not. Restatement (Second) of Torts § 433B, Comment b (1965).

The evidence here was sufficient to meet the plaintiffs' burden. The expert Burnstine's testimony was that one of three negligently designed defects caused the accident. However, since each defect would cause the same occurrence in a similar way the expert could not say which of these took place at the time of the accident. Each, in the expert's opinion, was as probable as the other. Only one actually caused the accident but the expert testified that "surely it had to be one of them." Thus, any one of these conditions could be found to be a probable cause of the accident and all together reasonably excluded the likelihood of other causes. "There is no requirement of law that the plaintiff point out the exact way an accident happens. The plaintiff sustained her burden if she proved that there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause."

*McLaughlin* v. *Berstein*, 356 Mass. 219, 226 (1969). *Beaver* v. *Costin*, 352 Mass. 624, 627 (1967). Thus, we do not agree with the argument of General Motors that the plaintiffs must somehow identify which of the three defects caused the accident even though the evidence showed that, as to each, General Motors was negligent and that "surely it had to be one of them" that caused the accident.

General Motors also argues that Burstine's expert opinions should have been ignored because there was not adequate evidentiary support for any of them. Again, we do not agree. It is true that expert testimony on the issue of causation does not help when it rests on speculation alone. *Swartz* v. *General Motors Corp.*, 375 Mass. 628, 633 (1978). Furthermore, an opinion given by an expert will be disregarded where it amounts to no more than mere speculation or a guess from subordinate facts that do not give adequate support to the conclusion reached. *Sevigny's Case*, 337 Mass. 747, 751 (1958). *Nass* v. *Duxbury*, 327 Mass. 396 (1951). However, those principles do not invalidate the expert's opinions here, because the jury could properly find that the facts supported all three of Burnstine's "theories."[1]

Pursuing its argument as to inadequate evidence, General Motors asserts that Burstine's opinions were speculative and conjectural because they were inconsistent with the evidence in the case, particularly the facts as related by Carey. For example, the company argues that Burnstine's statement that either the fast idle cam or the secondary lockout system caused the accident was not consistent with the accident facts as related by Carey. This argument is in turn premised on evidence that shows that, if either of these deficiencies caused the acceleration just before the accident, it would still be possible

[1] Because we conclude that all three theories were supported by the evidence, we need not examine further the position of General Motors that, if any of the three theories was not adequately supported by the evidence, the company was entitled to directed verdicts.

to lift the accelerator pedal; that on previous occasions Carey had freed the pedal by kicking it on the side with his right foot; and that kicking it in similar fashion on the occasion of the accident did not cure the difficulty. Even if we accept the defendant's premise that Carey was bound by his own testimony, it is sufficient to say that on his entire testimony the jury could properly have concluded that the facts as he described them were not inconsistent in any substantial way with any of the three theories relied on by Burnstine. In particular, the jury could properly conclude that nothing Carey said amounted to an admission that the pedal could not be lifted.

In similar vein, the defendant argues that, since the accelerator pedal would have to be depressed a certain minimum distance in order for the secondary lockout system to malfunction and cause the accident, Carey's testimony would not justify a finding that sufficient pressure was exerted on the pedal. Also, the defendant says, based on Burnstine's own theory as to the secondary lockout system, a certain amount of "gritty material" must have been present on the related parts before malfunction could occur. Nor, says the defendant, was there evidence of acceleration, deceleration, or road bumps, as required by Burnstine's theory. Finally, the contention is that there was nothing unique in the manner of Carey's driving which would have caused the back-up wire to interfere with the acceleration apparatus.

In disposing of these arguments, it is enough for us to say that our review of the record reveals that there were sufficient facts on which the expert could base his opinion. That is the crucial issue. The analytical arguments of General Motors, emphasizing what it views as omissions and inconsistencies in the facts relied on by the expert witness, go to the weight of the evidence, some of it conflicting. Thus they more appropriately should be, and undoubtedly were, addressed to the jury. Many cases relied on by General Motors, wherein this court and other courts have held that the opinions of experts were not

probative because they were not adequately based on facts in evidence, are clearly distinguishable on their facts from the instant case.[2]

2. The defendant's exceptions to the charge asserted error in the judge's instructions which permitted the jury to find against the defendant without a finding that the accident was caused by a specific, identifiable defect attributable to the defendant's negligence. The defendant's argument fails for the same reasons which defeat its motions for directed verdicts and motion for judgment notwithstanding the verdict. There was evidence that the accident was "surely" caused by one of three defects, each as probable as the others, and all attributable to the defendant's negligence. The judge correctly charged the jury that "[i]n order to be entitled to recovery of damages in this case, the plaintiffs must satisfy you within the realm of probability that this accident was caused by a condition of Mr. Carey's car that resulted from the design that the plaintiffs have alleged to be improper. . . . It is not enough for the plaintiffs to prove that their accident might have—could have—resulted from negligent design. They must show that it is more likely than not that it did." The judge further charged the jury that if they could identify the specific defect they could find for the plaintiffs only if that defect resulted from the defendant's negligence. The jury were also told that if they could not identify which of the three defects caused the accident (although it was one of them) they could find for the plaintiffs only if all three resulted from the defendant's negligence: "In other words, if the jury is satisfied that one of these conditions caused the accident but the jury doesn't know which one it was, and General Motors was

---

[2] See, e.g., *Swartz* v. *General Motors Corp.*, 375 Mass. 628 (1978); *Currie* v. *Lee Equip. Corp.*, 362 Mass. 765 (1973); *Oberlander's Case*, 348 Mass. 1 (1964); *Look's Case*, 345 Mass. 112 (1962); *Sevigny's Case*, 337 Mass. 747 (1958); *Nass* v. *Duxbury*, 327 Mass. 396 (1951); *Carlson* v. *American Safety Equip. Corp.*, 528 F.2d 384 (1st Cir. 1976); *Cassette* v. *General Motors Corp.*, 73 Mich. App. 225 (1977).

negligent only with respect to one or two of those conditions, then it simply could not be said that General Motors' negligence caused the condition which resulted in the accident." Also, the judge explained that the jury could find for the plaintiffs only if they "conclude[d] that one of these three alternatives relied upon by the plaintiffs probably caused this accident."

3. The judge admitted in evidence, over the defendant's objection and exception, a letter sent by the defendant corporation in March of 1969, to owners of Chevrolets equipped with fast idle cams similar to the one in Carey's vehicle, suggesting the recall of the vehicles for correction of the defective cam. We think the letter was properly admitted. One element of the plaintiffs' case is proof that the alleged defects were present in the Carey vehicle when it left the hands of General Motors. *Smith* v. *Ariens Co.*, 375 Mass. 620, 626 (1978). Although we have not previously decided this issue, we think that the better rule is that, where the plaintiff has independently proved, by expert or other testimony, that the defect that was the subject matter of the recall existed in his vehicle at the time of the accident, the recall letter should be held to be admissible as part of the plaintiff's proof against the manufacturer. Frumer & Friedman, Products Liability § 12.01[5] (1960). Many jurisdictions have adopted this rule. See *Farner* v. *Paccar, Inc.*, 562 F.2d 518, 527-528 (8th Cir. 1977); *Nevels* v. *Ford Motor Co.*, 439 F.2d 251, 258 (5th Cir. 1971); *Higgins* v. *General Motors Corp.*, 250 Ark. 551 (1971); *Harley-Davidson Motor Co.* v. *Carpenter*, 350 So. 2d 360, 361 (Fla. Dist. Ct. App. 1977); *Manieri* v. *Volkswagenwerk A.G.*, 151 N.J. Super. 422 (1977); *Barry* v. *Manglass*, 55 App. Div. 2d 1 (N.Y. 1976); *Fields* v. *Volkswagen of America, Inc.*, 555 P.2d 48, 57-58 (Okla. 1976). Cases relied on by General Motors to support the contrary position excluded the recall letters from evidence because the plaintiffs failed to prove independently that the defect necessitating the recall existed at the time of, and caused, the accident. See, e.g., *Glynn Plymouth, Inc.*

v. *Davis*, 120 Ga. App. 475 (1969), aff'd sub nom. *Chrysler Motor Corp.* v. *Davis*, 226 Ga. 221 (1970); *Landry* v. *Adam*, 282 So. 2d 590 (La. App. 1973).

The evidence in the instant case tended to show that the fast idle cam was defective at the time of the accident. The plaintiffs' automotive engineer testified that it was improper engineering practice to manufacture a part using a plastic-metal combination such as the cam. Further, the plaintiffs' materials expert testified that the design of the cam was improper engineering practice and that the cam was, at the least, cracked through one of its thin plastic walls before the collision with the tree. The risk created by General Motors' negligence in designing the cam was that the cam would crack, separate, and jam the throttles open. This was exactly the risk which General Motors described in its recall letter: "[I]t is also possible that a piece of the cam may become lodged in the throttle linkage which could prevent the throttle from closing. If this should occur while the vehicle is in motion, the vehicle will not slow down when the driver removes his foot from the accelerator pedal." The plaintiffs' automotive engineer testified that a cracked and separated fast idle cam was one of the probable causes of the stuck throttle condition which Carey experienced just before the accident. Since there was proof that the cam on Carey's Corvette was defective and that this defect was one of the probable causes of the accident, the recall letter was clearly relevant evidence that this defect in the cam existed at the time the 1968 Corvette left General Motors.

It is not a convincing argument that the admission of such letters in evidence would inhibit vehicle manufacturers from initiating a recall campaign.[3] The policy argument is ineffective, since the recall of defective vehicles

---

[3] Compare the policy arguments advanced against admission in evidence, as proof of negligence, precautions, and repairs by a defendant after an accident. *Ladd* v. *New York, N.H. & H.R.R.*, 335 Mass. 117, 120 (1956). *Shinners* v. *Proprietors of Locks & Canals*, 154 Mass. 168, 169-171 (1891).

is not voluntary but mandated by Federal law. See 15 U.S.C. § 1411 (1976).

4. General Motors asserts error in the denial of its motion that the clerk of the court be directed not to add interest to the sum awarded by the jury to Langevin to compensate him for future loss of earning capcity.[4] There is no contention that the judge was in error in his instruction that the jury should award the present value of a sum sufficient to compensate the plaintiff for future loss. The interest was thereafter correctly calculated on the entire verdict as unequivocally required by the statute. G. L. c. 231, § 6B.

*Judgments affirmed.*

------

[4] The jury had returned the verdicts in such form that the amount awarded for this element of damages was identifiable.