Richard P. Campbell, Craig & Macauley Professional Corp., Boston, Mass., for defendants.

**Cynthia A. SLATKAVITZ, Plaintiff,**

v.

**GENERAL MOTORS CORP., Defendant.**

**Civ. A. No. 80–2774–C.**

United States District Court,
D. Massachusetts.

Sept. 30, 1981.

OPINION

CAFFREY, Chief Judge.

This is an action of tort for negligence brought by Cynthia A. Slatkavitz against General Motors Corporation. The action was commenced in Norfolk County Superior Court and removed to this Court. Jurisdiction is founded on diversity of citizenship.

In essence, the plaintiff alleges that the defendant, General Motors, was negligent in designing, manufacturing and distributing a motor vehicle capable of traveling at a very high rate of speed. The complaint contains three virtually identical counts; they are described as follows in a brief filed by counsel for plaintiff. "The first count alleges that the Defendant was guilty of common law negligence in its design, manufacture, marketing and distribution of the

[oldsmobile] 4–4–2, in that it could be operated 'at a great rate of speed, much greater than was reasonable or necessary and was thereby inherently dangerous'. . . . The second and third counts, which are virtually identical to the first count, allege breach of warranties by the Defendant and are based on M.G.L. c. 106 Sec. 2–314 and 2–315." Defendant has denied the allegations of negligence and breach of warranty and has raised several affirmative defenses.

The matter came before the Court on defendant's motion for summary judgment which motion is based on the pleadings, plaintiff's answers to interrogatories, and the transcripts of a number of depositions. After both oral argument and briefing of the motion, and on the basis of the entire record, I rule that there are no genuine issues of material fact and that the defendant is entitled to summary judgment as a matter of law.

For purposes of this motion, I take as true the following recital of the facts as stated in plaintiff's memorandum in support of its opposition to defendant's motion for summary judgment:

" . . . a fatal automobile accident . . . occurred on Route 126, in Bellingham, Massachusetts, at approximately 8:30 P.M., on November 11, 1977. The Plaintiff, Cynthia A Slatkavitz, was a passenger in an Oldsmobile 4–4–2 (hereinafter 4–4–2), Model Year 1970. The owner and operator of the 4–4–2 was Paul Dalpe, 17 years of age. The other passengers were Paul May, Nancy Aicardi and Jesse Bernard. Prior to the accident, the 4–4–2 was traveling southbound.

Traveling northbound on Route 126, at an apparent normal rate of speed, was a 1967 Ford Van, operated by Robert Joyal with one passenger, Stephen Gagnon.

As the two vehicles approached a bridge that spanned an abandoned railroad track, the respective operators were unable to see the other vehicle due to the incline of the bridge.

Paul Dalpe, traveling at a great rate of speed maneuvered the 4–4–2 into the northbound lane in order to pass a vehicle driven by Emile Riel, as the two vehicles (Riel's and Dalpe's) approached the bridge. After passing the Riel vehicle, Paul Dalpe lost control of the 4–4–2, it skidded sideways down the northbound lane of Route 126, into the path of the oncoming van. Neither of the operators, Dalpe or Joyal, were able to take evasive action. The left (driver's) side of the 4–4–2 collided with the front of the van. Joyal, Gagnon, Dalpe, May and Aicardi were all pronounced dead, within two hours of the accident, at area hospitals. Jesse Bernard, who survived the accident with minor injuries, has disappeared and cannot be located by either party. Cynthia Slatkavitz has suffered severe and permanent brain damage and has no present memory of the accident.

Those seven young people involved in the accident were the only eyewitnesses to the actual accident.

.    .    .    .    .

In addition to the lack of occurrence witnesses is the problem of the destruction of the two vehicles involved in the accident. Neither side was able to inspect the 4–4–2 or the van.

.    .    .    .    .

The accident report compiled by the Bellingham Police indicated that there were two witnesses: Renaldo Revito and Emile Riel. Mr. Riel was operating the motor vehicle that Paul Dalpe passed seconds before the collision took place. Mr. Revito was never located and it is not known where he was situated on Route 126 on the night in question.

Mr. Riel did give a statement to the Registry of Motor Vehicles.

Mr. Riel was able to identify a third person who was on Route 126 and in the general locus of the point of impact. That person is Hubert Arsenault. Mr. Arsenault was traveling south on Route 126 (the same direction as Dalpe and Riel) and operating his motor vehicle several hundred feet behind Riel with one other vehicle between them (Revito?). Mr. Arsenault's vehicle was the first passed by

Dalpe as he sped south. Seated high in his Ford Econoline Van, Mr. Arsenault had an excellent view of the roadway ahead of him as he watched the progress of the 4–4–2.

... neither Mr. Riel or Mr. Arsenault saw the actual collision, ..."

The following additional facts, not recited in plaintiff's brief, are established by the discovery contained in the record and their factuality is not challenged by plaintiff: The southbound 4–4–2 was traveling in the wrong (northbound) lane as it approached the crest of the overpass. It had crossed a double yellow line and a post-mortem blood sample taken from the body of the driver of the 4–4–2 revealed blood alcohol of .07%. The 4–4–2, while privately owned, had undergone some modifications including some raising of the rear end and the addition of new wheels and wide tires on the rear end.

■ The Massachusetts Supreme Judicial Court has not ruled to date that the legal duty of an automobile manufacturer to ordinary consumers requires the manufacturer to design and market cars with limited speed capacities. See generally Schemel v. General Motors Corp., 384 F.2d 802 (7th Cir. 1967). Given the facts of this case, a ruling on the scope of what counsel for the plaintiff concedes in his brief and oral argument is a novel theory of liability is neither necessary nor appropriate. Suffice it to say that under Massachusetts law "a manufacturer has the duty to design its product so that it is reasonably fit for the purpose for which it was made." Smith v. Ariens Co., 375 Mass. 620, 377 N.E.2d 954 (1978). More specifically, "a manufacturer must anticipate the environment in which its product will be used, and it must design against the reasonably foreseeable risks attending the product's use in that setting." Back v. The Wickes Corp., 375 Mass. 633, 378 N.E.2d 964 (1978).

■ Speed and acceleration are relative terms, always operating in changing contexts, and it divorces social policy from practical reality to measure a manufacturer's reasonableness by speed capacity alone. In any event, no manufacturer, however careful, could have designed against the unreasonable risk presented by the facts of this case.

It is important to keep in mind on both the issue of the alleged negligence and the issue of proximate causation that there is no available witness to this accident, no available witness saw the actual collision, no witness knows the actual speed of either vehicle, nor does any witness know just what the driver of either vehicle was looking at, saw or did immediately prior to the collision. There is no evidence known to the plaintiff or either of her parents which is relevant to proving negligence on the part of defendant or to proving that that claimed negligence of defendant was a proximate cause of the accident. There is nothing in the record to suggest that a car with a maximum speed of 70–80 miles per hour would not have caused the same dire consequences in light of the other factors established in this record. See Carey v. General Motors, 387 N.E.2d 583 (1979). The key element of causation cannot be left to a jury's speculation, LaClair v. Silberline Mfg. Co., 393 N.E.2d 867 (1979), and I rule that the defendant is therefore entitled to judgment as a matter of law.

Nor is there any reason to think that further discovery or a trial could clarify the causation issue, given that some material facts are undisputed and the balance are forever unascertainable. The plaintiff's experts offer mere speculation or guesses from subordinate facts, Carey, supra at 945, and a "verdict may not be based on conjecture and surmise, ... expert opinion does not help if it is demonstrated that it rests on speculation." Swartz v. General Motors Corp., 375 Mass. 628, 633, 378 N.E.2d 61 (1978).

The record conclusively demonstrates that the plaintiff cannot sustain a burden of showing that a defect attributable to GM's negligence caused the regrettable Bellingham accident.

Order accordingly.