**SAMOS IMEX CORPORATION,**
**Plaintiff, Appellant,**

v.

**NEXTEL COMMUNICATIONS,**
**INC., Defendant, Appellee,**

v.

**Brook Hill Enterprises, Inc., et al.,**
**Third–Party Defendants.**

**No. 98–2126.**

United States Court of Appeals,
First Circuit.

Heard Oct. 6, 1999.

Decided Oct. 26, 1999.

See also, 20 F.Supp.2d 248.

---

Herbert Abrams with whom Barry C. Klickstein and Abrams, Roberts, Klickstein & Levy were on brief for appellant.

Maia Aparo Moran with whom F.J. McDonald and Law Offices of F.J. McDonald were on brief for appellee.

Before BOUDIN, Circuit Judge, CYR, Senior Circuit Judge, and LYNCH, Circuit Judge.

BOUDIN, Circuit Judge.

In June 1997, plaintiff-appellant Samos Imex Corporation sued Nextel Communications, Inc. in the federal district court in Massachusetts. The gist of the complaint was that in 1995, Nextel had constructed an antenna or "monopole," over 100 feet high, within several feet of a building leased and occupied by Samos Imex under a lease that required Samos Imex to make repairs to the building. Samos Imex claimed that the antenna, which itself involved subsurface construction, had caused Samos Imex's building to shift, resulting in structural damage and rendering its freight elevator inoperative.

Prior to the suit being filed, John Carota, a structural engineering expert, gave Samos Imex a report evaluating the condition of the building, recommending repairs, and identifying "the probable cause" of the damage to the building and the freight elevator. The probable cause section of the report began by concluding that "[t]he probable cause of the recent movement and racking [i.e., shifting] [of] this

three story brick building ... can be directly attributed to the building responding to the effects of constructing the monopole project." The report then identified various "aspects" of the antenna project that "either singularly or in combination could have caused the failed elevator and cracked building support columns and walls."

This document, which was prepared in advance of the litigation, was the only disclosure of anticipated expert testimony made by Samos Imex by the time of the discovery deadline for plaintiff's expert testimony. Thereafter, Nextel moved to exclude Carota's testimony and for summary judgment. It argued that the Carota report was not accompanied by other information required by Fed.R.Civ.P. 26(a)(2)(B), such as exhibits to be used at trial by the expert, a list of his publications, disclosure of compensation, and a list of other cases in which the expert has testified within the preceding four years. In the same motion, Nextel sought summary judgment on the separate ground that the report, even if believed, did not establish that the antenna had more likely than not caused the harm complained of; rather, according to Nextel, the report dwelt solely in "could haves" and "possibilities."

In August 1998, the district court heard oral argument and decided the matter from the bench. It rejected the request to exclude the engineering report as a sanction for violation of discovery rules, but it entered summary judgment on the ground that the report did not purport to establish that "more probably than not" the antenna construction was the cause of the damage—the threshold of proof that the court said was inherent in the preponderance of the evidence standard that generally applies in civil cases.

In the hearing, counsel for Samos Imex responded to the court that Carota would testify that when he used the phrase "the probable cause" in his report, he meant "more likely than not." The court said that it understood the proffer to mean that if Carota was called to the stand "he would answer that more likely than not the shifting of the building which caused the elevator to bind was [caused by] the Nextel pole." However, the court said that to accept this proffer as modifying the report would undermine proper case management and discovery rules and that the report itself remained "inadequate given the required standard."

██ Samos Imex now appeals and, reviewing the grant of summary judgment de novo, *see Cadle Co. v. Hayes,* 116 F.3d 957, 960 (1st Cir.1997), we reverse. The phrase "probable cause" is used, in the narrow confines of Fourth Amendment precedent, to establish a standard less demanding than "more probable than not." For example, arrests—made long before all proof is assembled for a trial—can be justified as based on probable cause by showing a reasonable basis for belief that a suspect committed a crime; in many cases such a basis exists without a 50 percent-plus likelihood that the suspect is guilty. *See, e.g., United States v. Garcia,* 179 F.3d 265, 269 (5th Cir.1999); *cf. United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989).

██ The standard is obviously higher at trial where, in a civil suit for negligence, the plaintiff must normally show both fault and causation. To establish the latter, plaintiff must show that it is more probable than not that the injury was caused by the action or event (or a combination of them) for which the defendant was responsible. *See, e.g., Forlano v. Hughes,* 393 Mass. 502, 471 N.E.2d 1315, 1319–20 (1984); *Bigwood v. Boston & N. St. Ry. Co.,* 209 Mass. 345, 95 N.E. 751, 752 (1911).[1] And laymen and many judges

---

1. Massachusetts cases sometimes describe the standard as requiring the plaintiff to show that "there was greater likelihood or probability that the harm complained of was due to causes for which the defendant was responsible than from any other cause." *Carey v.*

might easily refer to such a cause as "the probable cause" of an accident, meaning that it was the more likely than not cause.

Words like "probable" and "likely" are highly elastic in common use, which is why they are often surrounded by other phrases ("more probable than not", "a reasonable likelihood"), that sometimes lend greater precision and sometimes do not. When a magistrate judge speaks of "probable cause" in a suppression hearing, we assume that he means a reasonable basis sufficient to satisfy the Fourth Amendment; but if a doctor testified on the stand that *the* probable cause of death was a heart attack, he might be expected to mean that the heart attack was more likely than not the cause of death. If the doctor meant only that a heart attack was merely one *possible* cause among others, it would be up to the opposing counsel to draw this out on cross-examination.

■ In all events, counsel for the plaintiff made an immediate proffer that the expert would testify that the monopole was more likely than not the cause of the injury and that was what he had intended by use of the phrase "probable cause" in the report. If there were any doubt, it would be easy enough to conduct a brief deposition of the witness. It is one thing to allow counsel to contradict by proffer something the expert said in the report or to supply a manifest omission; in that event, case management and discovery concerns would be legitimate objections. But it is hard to justify dismissal of a case on summary judgment, based on what is at worst ambiguous language, in the face of an explicit proffer by counsel that the witness meant just what many readers would expect the witness to have intended.

*General Motors Corp.*, 377 Mass. 736, 387 N.E.2d 583, 585 (1979) (quoting *McLaughlin v. Bernstein*, 356 Mass. 219, 249 N.E.2d 17, 22 (1969)). But it is highly doubtful that this would allow liability based on a less-likely-than-not cause merely because it is *more* likely than any other single cause.

Admittedly, further in the Carota report he used phrases like "could have caused" and the like, and Nextel presses this point on appeal. But the main use of these phrases, which occur in the same paragraph as the "probable cause" statement, are actually references to multiple causes *all* of which related to the construction or operation of the antenna and for all of which Nextel would likely be responsible (absent some further explanation). So long as Nextel was responsible for all of the possible causes, it would not matter whether the precise causal path could be identified. *See, e.g., Solimene v. B. Grauel & Co.*, 399 Mass. 790, 507 N.E.2d 662, 667 & n. 12 (1987); *Carey v. General Motors Corp.*, 377 Mass. 736, 387 N.E.2d 583, 585–86 (1979).

This is not a case in which the witness mouths the proper conclusion but the detailed explanation in his report or proffered testimony clearly contradicts or provides no arguable foundation for the conclusion. *See, e.g., Colantuoni v. Alfred Calcagni & Sons, Inc.*, 44 F.3d 1, 5 (1st Cir.1994). Nor does this appear to be a case in which the expert was talking generally about why buildings collapse without reaching a conclusion as to why this specific building had shifted; on the contrary, the pivotal sentence in the probable cause section of the report (quoted above) spoke of "the probable cause" of the shifting of "this three-story brick building." [2] Nextel was free to depose Carota to clarify his "could have" references, but it was not entitled to summary judgment on the present state of the record.

Nextel asks us to affirm the district court's decision on a distinct "alternative" ground, namely, the alleged failure of Nex-

2. While the basis for the conclusion could certainly be explored in a deposition and may yet be vulnerable, this seems to us quite different than the situation—briefly adverted to by the district court—in which the Surgeon General speaks of smoking in general as the probable cause of cancer without reaching any conclusion as to a specific death.

tel to comply with discovery rules by furnishing required information *about* the expert. At one point in the transcript the district court appears squarely to have rejected such a claim of violation as the basis for excluding Carota's testimony, hardly a choice comprising a patent abuse of discretion. In effect, Nextel is asking us to conclude that there was a violation of the discovery rules and that it was of such a character as to compel the district court to exclude the report as a sanction for this violation.

It is quite true that as amended, the civil procedure rules make clear that exclusion of evidence is a standard sanction for a violation of the duty of disclosure under Rule 26(a). *See* Fed.R.Civ.P. 37(c); *Klonoski v. Mahlab,* 156 F.3d 255 (1st Cir.1998). But this is far from saying that the district court is obligated to exclude evidence based on such a failure when it occurs long before trial and is likely subject to correction without much harm to the opposing party; nor do we know whether there may be some "justification" for any failure to disclose. *See* Fed. R.Civ.P. 37(c). In all events, on remand the district court is free to enforce its discovery rules by ordering compliance, sanctions, or any other appropriate remedy.

We have no bias whatever against summary judgment or against opinions from the bench, both of which are often marks of efficient management. But where a building incurs harm after significant nearby construction and an expert calls the construction "the probable cause," we think that more is needed to support summary judgment than an easily resolved doubt as to whether the expert meant "more probable than not." There may well be more to the story, but we can only act on what the record discloses. Nothing precludes a renewed motion for summary judgment if and when Carota is deposed.

The judgment of the district court is *reversed* and the matter *remanded* for further proceedings consistent with this opinion.

*It is so ordered.*