Brady, J.
The defendant Volkswagen of America, Inc. (Volkswagen) moves to preclude the testimony of plaintiffs accident reconstructionist, Daniel J. Donovan, Sr. (Donovan), and for the entry of judgment. After a hearing and upon review, the motion is allowed; summary judgment shall enter for Volkswagen.
Defendant Pass & Weisz, Inc. (P&W) moves to preclude the testimony of both Donovan and Steven Lima, plaintiff s tire expert. For the following reasons, P&W’s motion is allowed.
The basic facts are these. Plaintiff owned a 1991 Audi 100 motor vehicle. On Friday, January 26, 1996, he had four new tires mounted and balanced, and other service performed at P&W in Burlington. On Monday, January 29, 1996, plaintiff was driving his Audi on Route 128 southbound in Waltham. According to Donovan’s reconstruction, the right rear wheel became deflated; in reaction, plaintiff oversteered to his left causing the vehicle to yaw counterclockwise. The front of the rotating vehicle contacted the median guardrail near the car’s left front corner. The vehicle continued to rotate counterclockwise. The front bumper was ripped off. The car eventually came to rest in the roadway facing generally west.
The driver’s air bag did not deploy in the crash. Plaintiff, who was belted, sustained injuries to his face, head and upper torso which he contends he would not have sustained if the air bag had inflated.
Plaintiff does not press his case against Volkswagen, the U.S. distributor of the car, on the usual product liability theoiy of breach of the implied warranty of merchantability due to a defective air bag. Instead, he asserts that Volkswagen expressly warranted, in the owner’s manual, that the air bag would deploy in the circumstances involved in plaintiffs accident. To prevail, at a minimum, plaintiff must establish that the facts of his accident match the conditions under which Volkswagen warranted that the air bag would deploy.
Page 160 of the owner’s manual contains a “Technical Description” of the “Supplemental Airbag System-Driver’s Side." It explains that the “Air bag is activated by a severe frontal collision occurring within the area indicated in the left illustration. The air bag is not actuated by minor frontal collisions, side or rear collisions, by a rollover or in cases where there is no considerable impact on the front of the vehicle.” The “left illustration” depicts an arrow aimed at the front of the vehicle representing force applied from that direction. The “area” includes forces delivered to the front within thirty degrees either way of the arrow.

1. DONOVAN

Without expert guidance the jury would be unable to determine whether the subject accident fit the *546 parameters shown by the diagram in the owner’s manual. Donovan is a former state trooper with considerable experience in accident reconstruction. Donovan does not claim to be an expert in air bags and will not offer an opinion that the air bag in this case malfunctioned. In his deposition, upon questioning by defense counsel, he initially opined that the angle of impact between the left front bumper and the guardrail was approximately thirty degrees. In drawing the angle he was attempting to describe, Donovan depicted the angle between the car and the guardrail at impact. Comparing his sketch (depo. exh. 8) to the illustration in the owner’s manual, it is evident that Mr. Donovan’s angle was not what the owner’s manual was describing in the “left illustration.” Alert to the problem, plaintiffs counsel, when his turn to question came, showed the owner’s manual diagram to Donovan and questioned him further about it. Donovan then recognized that the angle he had drawn was not the same as the angle described in the Volkswagen diagram. Undaunted, he continued to opine that the angle of impact was thirty degrees, plus or minus two degrees. “Could be thirty-two degrees or it could be twenty-eight degrees. It’s an estimate.” (Donovan Deposition, 11-72.)
Leaving aside Mr. Donovan’s confusion about the angle, and giving him the benefit of the doubt, his testimony of an angle of impact of somewhere between 28-30 degrees is insufficient for the plaintiffs case to be submitted to the jury on the claim against Volkswagen. To get to the jury, plaintiff must prove that the collision occurred within the area of the diagram. On Donovan’s evidence it is just as likely that the collision occurred outside the area depicted as within it.
Furthermore, Volkswagen only represented that the air bag would activate on a “severe” frontal collision. Donovan never opined that the force applied to the front was severe. He made no impact speed calculations. Nor did he characterize the impact as “severe.” Rather, he described the contact as a “glancing blow” (Deposition 1-55, II-16) and a “slight impact” (Deposition 11-18).
This is an insufficient basis to conclude that the accident was forceful enough to activate the air bag in accordance with the conditions described in the owner’s manual.

2. LIMA

Plaintiff asserts that P&W improperly mounted the right rear tire on January 26, 1996. Plaintiff offers Steven Lima, an automobile mechanic, as his tire failure expert witness. Lima studied mechanical drafting in high school, after which he studied automotive mechanics at a Rhode Island trade school, graduating in 1977. At his deposition, Lima testified to having nearly twenty-two years of practical experience with tire failures. He testified that he usually identified tire failures through visual inspection. In this case, Lima said he both examined the tire visually and dissected the tire. Lima further testified that he spent twenty to thirty minutes examining the right rear tire. During this inspection, Lima noticed that there was rubber missing and that the steel cores were showing on the beads. From this physical evidence, Lima concluded that the tire failed either because of a manufacturing defect or improper mounting. Lima based this conclusion on his years of experience as a mechanic. Lima stated he believed the right rear tire was improperly mounted because he’d seen tires in a similar condition that were improperly mounted “millions” of times. However, Lima also testified that the cause of the tire failure could have been a manufacturing defect. Lima stated “(w)ithout actually . . . sending the tire to the manufacturer and having it inspected, I couldn’t tell you that end of it. But I can only tell you from experience, from years of experience my opinion would be that the bead was ripped away.”[1]
Observations based on experience proffered by expert witnesses are considered “but one scientific technique,” which should be examined by the court to determine reliability. Theresa Canavan’s Case, 432 Mass. 304, 313 (2000) (noting that the judge’s “gate keeping function ... is the same regardless of the nature of the methodology used”). This Court must, then, evaluate Lima’s methodology to determine whether his testimony is reliable. Id. at 314. In Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993), the U.S. Supreme Court set out a number of factors a court may consider in its analysis of expert testimony. See Commonwealth v. Lanigan, 419 Mass. 15 (1994) (adopting Daubert analysis). Although most of these factors apply more readily to scientific testimony, a few can be applied to expert testimony based on field experience. Thus, when evaluating the reliability of Lima’s methodology this Court will consider whether he conducted any tests, relied on any standards accepted within his trade and ruled out alternative theories. Daubert v. Merrell Dow Pharmaceuticals, Inc., 509 U.S. 579 (1993).
In Diviero v. Uniroyal Goodrich Tire Co., 919 F.Supp. 1353 (D.Ariz. 1996), affirmed, 114 F.3d 851 (9th Cir. 1997), the U.S. District Court dealt with a situation similar to that presented in this case. In Diviero, the plaintiff presented an engineer as an expert witness, who testified that a tire was defective due to faulty adhesion. The engineer in Diviero based his conclusion regarding the cause of tire failure on his years of experience examining tires. Specifically, the engineer in Diviero testified that he inspected the tires visually and had looked at “millions-or not millions, many, many tires over [his] career.” Diviero, 919 F.Sup. at 1359. The Court refused to admit the testimony of the engineer based on its conclusion that the engineer’s methodology was not scientifically valid. The court noted that the engineer’s methodology did not include review of independent publications, peer review articles or independent testing and validation. Id. Fur *547 thermore, the Court observed that the engineer failed to eliminate other possible causes of tire failure when making his determination. After considering the engineer’s testimony and methodology, the Court concluded that the engineer “offered no reasonable explanation why he concluded there was a defect, just that because of his vast experience with examining tires it must be defective.” Diviero, 919 F.Sup. at 1360.
Like the engineer in Diviero, Lima offers no explanation of how he came to his conclusion that the tire was improperly mounted other the fact that, to Lima, the tire looks like it was improperly mounted. Lima bases his opinion on the physical appearance of the tire and his years of experience. In short, after looking at the damaged tire he concluded that it was probably improperly mounted or manufactured. Lima did not run tests on the tire, nor did he possess the knowledge of materials to determine whether the tire was defectively manufactured. Similarly, plaintiff has presented no evidence suggesting that within the field of tire inspection, Lima’s method of coming to his conclusion is generally accepted. There is no indication in the record, other than Lima’s experience in looking at tires, that the methods he used in coming to his conclusion are reliable. Because Lima’s methodology is not reliable, his testimony should be excluded.

ORDER

For the reasons stated above, defendant Volkswagen’s Motion to Preclude Testimony of Daniel J. Donovan, Sr., and for entry of Judgment is ALLOWED. Defendant Pass & Weisz’s Motion to Preclude the Testimony of both Donovan and Steven Lima is also ALLOWED.

 Multiple theories of defect may be sufficient to get a product liability case to the juiy, as long as each defect is attributable to the defendant. See Carey v. General Motors Corporation, 377 Mass. 736, 739-41 (1979). Here, plaintiff does not claim that a manufacturing defect is attributable to P&W.