USCA1 Opinion

 

 United States Court of Appeals For the First CircuitNo. 97-2393 KEITH SCHUBERT and KATHY SCHUBERT, Plaintiffs, Appellants, v. NISSAN MOTOR CORPORATION IN U.S.A., Defendant, Appellee. APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS [Hon. Robert E. Keeton, U.S. District Judge] Before Selya, Circuit Judge,   Bownes, Senior Circuit Judge,  and Boudin, Circuit Judge.   Paul E. Mitchell, with whom William A. Schneider and Mitchell,McGowan & DeSimone, were on brief for appellants. Brian P. Voke, with whom Richard P. Campbell, and Campbell,Campbell & Edwards, were on brief for appellees.July 7, 1998 BOWNES, Senior Circuit Judge. In this diversity action,plaintiffs-appellants Keith and Kathy Schubert seek to holddefendant-appellee Nissan Motor Corporation in U.S.A. ("Nissan")liable for an injury to Mr. Schubert's back. Their suit is basedon a claim of product liability. The district court grantedNissan's summary judgment motion, and we affirm. I. We recite the underlying facts in the light mostfavorable to the Schuberts. United States v. Diebold, Inc., 369U.S. 654, 655 (1962) (per curiam).  On December 6, 1992, Mr. Schubert was driving his 1989Nissan pickup truck on Route 28 in Derry, New Hampshire. While hewas stopped in traffic, Schubert's truck was rear-ended by a 1977Ford sedan. Skid marks of just under seven feet were evident atthe accident site, and the Ford's front end was severely damaged bythe impact. Within twenty-four hours after the accident, Mr. Schubertbegan to experience among other symptoms irrelevant here lowerback pain. His complaints included pain radiating from the lowerback into the right buttock and thigh, and further on into theright calf and right foot. He was treated unsuccessfully withchiropractic therapy before x-rays revealed a congenital defect inhis lower back, specifically, spondylolisthesis. This condition isdefined as "forward displacement . . . of one vertebra overanother, usually of the fifth lumbar over the body of the sacrum,or of the fourth lumbar over the fifth, usually due to adevelopmental defect in the pars interarticularis." Dorland'sIllustrated Medical Dictionary 1563 (28th ed. 1994). In lay terms,this means the forward slippage of a vertebra out of normalalignment. It is undisputed that this was a congenital defect andexisted at the time of the accident. The defect, however, was notsymptomatic until after the collision.  After various conservative approaches to the pain, Mr.Schubert's neurosurgeon, Dr. Peter Grillo, performed a spinalfusion operation. Despite this operation, Mr. Schubert's answersto Nissan's interrogatories state that significant lower back andlower extremity pain remain. Plaintiffs' suit is premised upon a theory of faultyproduct design. Specifically, they allege that a horizontal metalpipe, located in the seat back frame and running across the lengthof the seat back, came into forceful contact with Mr. Schubert'sspine at the time of the rear-end collision. This impact allegedlyexacerbated his congenital back defect, making the asymptomaticcondition suddenly symptomatic. The primary evidence in support ofthis hypothesis is that the horizontal pipe, which is located fourand one half inches vertically from the bottom edge of the seatback, was bent backwards approximately one-half of an inch. Thebend in the pipe was not part of the seat back design. It can befairly adduced that the pipe was bent by some force in the timebetween the seat back's manufacture and the post-accidentexamination of it. It must be noted that the apex of the bend isnot located directly behind the driver's side of the bench seat,but instead is at the mid-point of the pipe length. Plaintiffs'expert Murray Burnstine testified in deposition, "[i]f you have apipe that's connected at both ends, no matter where you apply theforce, it's going to bow in the middle." Burnstine Dep. at 49. Plaintiffs filed suit against Nissan in November, 1995 inthe district of Massachusetts, alleging product liability claims. The Schuberts retained the aforementioned Murray Burnstine as anexpert witness. According to Plaintiffs' answers to Nissan'sinterrogatories, Burnstine would testify that,  parts of the seat back frame are bent consistent with a rearward force being applied to these parts by the victims [sic] lower back and spine. The padding between the victim and the metal structures was not adequate to prevent a concentration of the forces on Schuberts [sic] back. . . . Grounds for opinion are education and training  inspection of the seat back[,] . . . a review of the file including photos of the vehicle and common sense. Schubert App. at 38.  Nissan subsequently deposed Burnstine, and elicited fromhim the admission that he did not have personal knowledge that thehorizontal pipe lined up vertically with the location of Mr.Schubert's spinal injury. Rather, in the deposition, Burnstinestated that he assumed that the lumbar injury lined up with thepipe's location. Burnstine admitted that he had not done anythingto independently verify this assumption. See Burnstine Dep. at 27,44. Instead, Burnstine stated that he relied on representationsmade to him as well as photographs depicting an individual sittingin the truck seat. For purposes of the photo, a piece of tape wasplaced on the seat-back to indicate the vertical position of thepipe. The face of the seated individual is not visible in thephotograph. More importantly, there was no indication in thephotograph of the location of the spinal injury on the back of theperson in the truck seat. On the basis of this depositiontestimony, Nissan moved to exclude the proposed testimony ofBurnstine because the opinion lacked sufficient foundation. Thedistrict court initially dismissed the motion without prejudice. Nissan thereafter moved for summary judgment. Nissan'smotion was premised on the argument that the Schuberts had failedto make a showing sufficient to prove that the alleged designdefect in the seat the pipe had, more likely than not, causedMr. Schubert's injury. Nor, Nissan argued, had the Schubertspresented any evidence to demonstrate that Mr. Schubert was injuredmore severely than he would have been if the bench seat had beenreasonably designed.  The Schuberts responded to Nissan's motion, arguing,without citation to the record, that there was "ample evidence withwhich to demonstrate the causal connection between the seat backdesign and [the] injuries; the weight of such [is] appropriate forthe trier of fact, not summary judgment." The district court,however, was not satisfied and issued an order requiring plaintiffsto: (i) comply with Local Rule 56.1; and (ii) "explicitly addresscausation and show what admissible evidence will be offered tosupport plaintiff's theory of causation. A suggestion as to whatan expert will testify at some future time is not enough. Plaintiff must produce admissible evidence now." Memorandum andOrder of October 17, 1997 (emphasis ours). The Schuberts responded. Appended to the new responsewere two sworn affidavits. The first, an affidavit of MurrayBurnstine, contained the following relevant statements: 4. I have not reviewed the plaintiff's medical records . . . as I have not been retained as a medical expert. . . . I have, however, reviewed the plaintiff's x-rays, the report of Dr. Peter Grillo and the plaintiffs's answers to interrogatories which both identify the location of the plaintiff's injury and discomfort at the plaintiff's lower lumbar spine. 5. I have examined the seat on which the plaintiff sat when another vehicle struck him from behind . . . . I have also examined photographs of the plaintiff seated in the subject seat. My examination of the subject seat and these photographs reveal that the horizontal pipe in the seat frame lines up consistent with the lumbar spine injury sustained by the plaintiff. 6. Based upon my years of experience in automotive design, biomechanical engineering, and occupant kinematics, it is my professional opinion that when the plaintiff's vehicle was struck from behind, the force caused the plaintiff's body to naturally move rearwards into the seat, and if some hard object exist[ing] within the seat lined up consistent with the lumbar region of the plaintiff's spine, such as the horizontal bar present in the subject seat in this case, then to a reasonable degree of professional certainty, the force with which the plaintiff struck the bar did, more likely than not, directly and proximately cause[] or exacerbate[] the injuries to the plaintiff's lumbar spine. 7. Based upon my . . . experience . . . , and examination of the subject seat following the . . . accident, the horizontal bar in the seat frame was bent consistent with the force of the plaintiff's body moving rearwards into the seat following the plaintiff's accident.  Further, . . . it is my professional opinion [that] the inncorporation [sic] of the horizontal bar in the design of the seat concentrated the force of the impact on the plaintiff's lumbar spine and that an alternative design, one which would disperse the force of the impact was feasible, available, and desirable . . . . The second affidavit the Schuberts submitted was from Dr.Peter Grillo, Mr. Schubert's neurosurgeon, who opined that, "basedupon reasonable medical certainty, Mr. Schubert's injuries areconsistent with the direct application of force to his back," and"that it is more probable than not that the injuries sustained byMr. Schubert to his back after being struck from behind in his. . . truck, were directly and proximately caused by the motorvehicle accident." Appended to the Grillo affidavit was Dr.Grillo's three page reiteration of his medical treatment of Mr.Schubert to plaintiffs' counsel. The district court granted summary judgment to Nissan. First, the district court examined the affidavit of Dr. Grillo,concluding that Grillo's statement that Mr. Schubert's injurieswere "caused" by the motor vehicle accident constituted a "pureassertion of a conclusion without any disclosure of a foundationfor it." Memorandum and Order, November 10, 1997, at 9 (forcitation purposes, hereinafter "Memorandum"). The district courtfurther determined that "neither the factual statement in Dr.Grillo's affidavit, nor any other portion of the plaintiff'sfilings provide a factual foundation for Dr. Grillo's opinion thatMr. Schubert's injury was 'consistent with' the direct applicationof force." Id. at 10. Having decided that "the testimony of Dr. Grillo does notestablish causation for the plaintiffs," id. at 11, the districtcourt turned to the Burnstine affidavit. Stating that "[o]necritical part of the causation chain that plaintiffs assert in thiscase is establishing that the pipe impacted Mr. Schubert's back atthe same point where the injury occurred," id., the district courtconcluded from Burnstine's deposition testimony that "no foundationexists for a critical aspect of the expert's opinion proffered inthis case," id. at 12. The district court summed up Burnstine'saffidavit by stating that it was "a conclusory assertion about anultimate legal issue," id. at 14, that "relies on another asserted,yet unproved fact, that the pipe and the injury line up," id. The district court therefore held that the Schubertsfailed to carry their burden on "the issue of causation even whenthe evidence presented is viewed in the light most favorable tothem," id. at 15, and entered summary judgment in Nissan's favor. This appeal followed. II. We begin our analysis by determining what rulings thedistrict court made on the motion for summary judgment. Initiallywe find that the district court was not excluding the experttestimony under the principles established in Daubert v. MerrellDow Pharm., Inc., 509 U.S. 579 (1993). See Vadala v. TeledyneIndus., Inc., 44 F.3d 36, 39 (1st Cir. 1995) ("Daubert's holding that a scientific principle may sometimes be the basis for experttestimony even if it is not 'generally accepted' has nothing todo with this case, in which the dispute concerns an event ratherthan a scientific law.").  The next question is whether the district courtdetermined that the affidavits were not competent evidence underFed. R. Civ. P. 56(e), or, alternatively, whether the districtcourt had examined the affidavits for their bearing on the issue ofcausation in an attempt to determine whether the Schuberts hadadduced sufficient evidence on an element essential to their case. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Thedistinction between the two approaches is of crucial importance toour analysis. If the district court determined Rule 56(e)admissibility, we review that decision for abuse of discretionprior to turning to our de novo summary judgment examination. SeeVazquez v. Lopez-Rosario, 134 F.3d 28, 33 (1st Cir. 1998). "UnderRule 56(e), affidavits supporting or opposing summary judgment mustset forth facts that would be admissible in evidence. A districtcourt may exclude expert testimony where it finds that thetestimony has no foundation or rests on . . . speculative evidence. Such decisions are reviewed for abuse of discretion." Casas OfficeMachs., Inc. v. Mita Copystar Am., Inc., 42 F.3d 668, 681 (1st Cir.1994) (internal citations omitted). In the absence of adetermination on Rule 56(e) admissibility, of course, our review ofthe grant of summary judgment is de novo. See G.D. v. WestmorelandSch. Dist., 930 F.2d 942, 946 (1st Cir. 1991). Nissan argues thatthe former course was being taken, while the Schuberts posit thatthe district court improperly weighed the evidence contained in theaffidavits in deciding the summary judgment motion. The districtcourt's memorandum is not completely clear it does not directlystate that a Rule 56(e) determination was made. A close reading of the district court's memorandum hasconvinced us that it was in fact determining that the affidavitsdid not meet Rule 56(e)'s requirements of admissibility, and thatthe court was excluding the affidavits from consideration for thatreason. First, the memorandum launches the analysis concerning theaffidavits in a way which distinctly implies a Rule 56(e)determination, stating, "[i]t is the responsibility of the trialjudge to determine, before receiving the expert's testimony forjury consideration, whether the expert's testimony is based on anadequate foundation to be admissible." Memorandum at 8. Second,the district court specifically noted that it had previouslyordered the plaintiffs to "produce admissible evidence now." Id.at 9 (quoting Memorandum and Order, October 17, 1997) (emphasisours). Finally, the district court's primary concern throughoutits discussion of the Burnstine affidavit is that Burnstineadmitted in deposition to a lack of personal knowledge regardingthe pipe's location relative to the back injury. In the summaryjudgment context, it is Rule 56(e) which requires affidavits to be"made on personal knowledge . . . ." We are therefore satisfiedthat the district court determined that neither affidavit wascompetent evidence under Rule 56(e). Cf. In re Paoli R.R. Yard PCBLitig., 916 F.2d 829, 853 (3d Cir. 1990) (instance where it was"not clear that the court was not merely choosing between opinionsas opposed to excluding plaintiff's opinion on evidentiarygrounds"). We therefore must determine whether the district court's exclusion of the two affidavits constituted an abuse of discretion. We have defined abuse of discretion as follows: "Abuse of discretion" is a phrase which sounds worse than it really is. All it need mean is that, when judicial action is taken in a discretionary matter, such action cannot be set aside by a reviewing court unless it has a definite and firm conviction that the court below committed a clear error of judgment in the conclusion it reached upon a weighing of the relevant factors.  In re Josephson, 218 F.2d 174, 182 (1st Cir. 1954). In the contextof the admission or exclusion of opinion evidence, we have statedthat "we will uphold the district court's ruling in this areaunless it is 'manifestly erroneous.'" Bogosian v. Mercedes-Benz ofN.A., Inc., 104 F.3d 472, 476 (1st Cir. 1997) (quoting Salem v.United States Lines Co., 370 U.S. 31, 35 (1962)); see also Stevensv. Bangor and Aroostook R.R. Co., 97 F.3d 594, 600 (1st Cir. 1996)(abuse of discretion must be "clear" to warrant reversal). Finally, we keep in mind that under abuse of discretion review, weare "not to substitute [our] judgment for that of the [districtcourt]." Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut.Auto. Ins. Co., 463 U.S. 29, 43 (1983).  We begin with the affidavit of Dr. Grillo. The districtcourt determined that Dr. Grillo's opinion concerning the cause ofMr. Schubert's injury constituted "pure assertion of a conclusionwithout any disclosure of a foundation for it." Memorandum at 9. We see no abuse of discretion in this ruling. Neither theaffidavit itself, nor the doctor's medical report on Mr. Schubert(appended to the affidavit), provide any factual basis for thestatement that Mr. Schubert's injuries are "consistent with thedirect application of force to his back." Although the Schuberts'counsel argued orally that Dr. Grillo's medical report contains afactual iteration sufficient to create a foundation for thisassertion, we have found nothing in the document which would dothat. The district court acted well within its discretion when itruled that the Grillo affidavit lacked sufficient foundation to bea competent Rule 56(e) affidavit. Plaintiffs argue in theirappellate brief that Grillo was retained not to opine on the causallink between the pipe and the injury, but rather to provideinformation "regarding his treatment and genesis of Mr. Schubert'smedical condition," Appellants' Br. at 12. But the doctor'saffidavit contains conclusory assertions concerning the cause ofMr. Schubert's injury. It was these statements that the districtcourt deemed without foundation. There was no abuse of discretion. The exclusion of the Burnstine affidavit is a moredifficult question. Burnstine's affidavit was, and is, thelinchpin to plaintiffs' theory of product liability. On thesurface, Burnstine's theory is plausible the existence of thehorizontal metal bar unduly exaggerated the force acting on Mr.Schubert's back during the rear-end collision. Similarly, the bendin the pipe would seem to support this theory. The district court,however, decided that the affidavit was not competent evidencebecause of Burnstine's deposition admission that he did not havepersonal knowledge that the pipe and the back injury lined up witheach other. To the court, Burnstine's admission demonstrated thatthe opinion testimony did not rest on an adequate factualfoundation to constitute reliable opinion testimony. We think the question whether to admit or excludeBurnstine's affidavit on this basis is a close call. On the onehand, Burnstine inspected the seat himself, and observed the bendin the pipe. Couple that observation with his considerableexperience in automotive crash reconstruction and engineering, andit seems to be a reasonable inference that Mr. Schubert's rearward-moving body was the force that bent the pipe. We were recentlyreminded, however, that although "[o]n a motion for summaryjudgment[] disputed issues of fact are resolved against the movingparty . . . [,] the question of admissibility of expert testimonyis not such an issue of fact, and is reviewable under the abuse ofdiscretion standard." General Elec. Co. v. Joiner, 118 S. Ct. 512, 517 (1997).  On the evidence presented, there was no assertion thatanyone knew firsthand whether the location of the pipe lined upwith Mr. Schubert's back injury. Courts have only those materialswhich the parties supply to them. See Diebold, 369 U.S. at 655(favorable inferences are drawn "from the underlying factscontained in . . . materials [submitted below]"). The materialssubmitted in opposition to Nissan's motion are completely silent onthis point. Rather, the Burnstine affidavit states that hisopinion was formed based upon his examination of the seat, andinspection of the photographs ostensibly depicting Mr. Schubert inthe seat. This is the same foundation that Burnstine testified toin deposition. Yet the photographs were not furnished inopposition either to Nissan's exclusionary or summary judgmentmotions, so there is no way to know whether and how they wouldconfirm that the pipe lined up with Mr. Schubert's back injury. "It is fundamental that expert testimony must be predicated onfacts legally sufficient to provide a basis for the expert'sopinion." Damon v. Sun Co., Inc., 87 F.3d 1467, 1474 (1st Cir.1996) (internal quotation marks omitted). We think it significantthat Burnstine's affidavit makes no effort to explain or correctthe deposition admissions. See Colantuoni v. Alfred Calcagni &Sons, Inc., 44 F.3d 1, 5 (1st Cir. 1994) (disregarding on summaryjudgment affidavit which contradicts earlier deposition testimonywith little explanation). We are therefore as the district courtwas left to speculate as to the proximity of the pipe to theinjury site. Thus, we cannot say on this record that the districtcourt's choice was "manifestly erroneous." Bogosian, 104 F.3d at476. The district court was proceeding under Massachusetts'law of product liability. Plaintiffs had a duty to demonstrate tothe district court "that there was greater likelihood orprobability that the harm complained of was due to causes for whichthe defendant was responsible than from any other cause." Carey v.General Motors Corp., 387 N.E.2d 583, 586 (Mass. 1979) (quotingMcLaughlin v. Bernstein, 249 N.E.2d 17, 22 (Mass. 1969)). UnderMassachusetts tort law, proof of causation "must be such as to makethe defendant's causality 'appear more likely or probable in thesense that actual belief in its truth exists in the mind or mindsof the tribunal notwithstanding any doubts that still lingerthere.'" Lynch v. Merrell-National Lab., 830 F.2d 1190, 1197 (1stCir. 1987) (quoting Smith v. Rapid Transit, Inc., 58 N.E.2d 754,755 (Mass. 1945)). In light of this standard, and the fact thatMr. Schubert suffered from an underlying congenital defect and wasinvolved in a relatively forceful automobile collision, we are notleft with a "definite and firm conviction that the court belowcommitted a clear error of judgment," Josephson, 218 F.2d at 182,in requiring a certain level of factual specificity. See alsoJoiner, 118 S. Ct. at 517 (relying on "general rule" that "it isvery much a matter of discretion with the court whether to receiveor exclude the evidence; but the appellate court will not reversein such a case, unless the ruling is manifestly erroneous")(quoting Spring Co. v. Edgar, 99 U.S. 645, 658 (1878)). We also note that the record indicates that theplaintiffs should have been well aware of the district court'sconcern over this issue. Although the initial motion to excludewas denied, it was done so without prejudice. Similarly, theclerk's notes from the summary judgment oral argument indicate thata colloquy ensued concerning the "admissable [sic] evidence uponwhich expert witness bases testimony," with Judge Keeton apparentlyindicating his concern that "no black-box opinions will go to thejury."  "'The very mission of the summary judgment procedure isto pierce the pleadings and to assess the proof in order to seewhether there is a genuine need for trial.'" DeNovellis v.Shalala, 124 F.3d 298, 305-06 (1st Cir. 1997) (quoting Fed. R. Civ.P. 56 advisory committee's notes, 1963 Amendment) (emphasis ours). In assessing this proof, Rule 56(e) charges the district court withensuring that the evidence proffered in opposition to a motion forsummary judgment has a foundation sufficient to allow it to reacha jury. If the nonmoving party is unable to provide suchadmissible proof, then the court is unable to say that there existsa "genuine need for trial." Id. (emphasis ours).  The district court's grant of summary judgment isaffirmed. Costs on appeal awarded to appellee.