Nowaczyk v. North Hampton          CV-97-635-JD   03/15/01
                 UNITED STATES DISTRICT COURT FOR THE
                        DISTRICT OF NEW HAMPSHIRE


Steven J. Nowaczyk

       v.                              Civil No. 97-635-JD
                                       Opinion No. 2001 DNH 048
Town of North Hampton, et al.


                            O R D E R


      The plaintiff, Steven Nowaczyk, proceeding pro se, brought

civil rights claims and state tort claims against municipal and

county defendants and their employees and three individuals,

arising from his arrest and prosecution on stalking and arson

charges.  The municipal defendants[1] have moved for partial

summary judgment in their favor with respect to the federal

claims and the state law claims of malicious prosecution, false

arrest, false imprisonment, and abuse of process based on the

issue of probable cause to arrest and prosecute Nowaczyk.

Nowaczyk objects.

_____

      [1]The defendants moving for summary judgment are the Town of
North Hampton, Richard Crowley, Dick Wollmar, Stanley Knowles,
Mary Herbert, Frank Beliveau, Richard Sawyer, Jr., David Giguere,
Robert Wharem, Jane Doe, and Michael Maloney (the North Hampton
defendants); the Town of Hampton, Robert Mark, Shawn Maloney,
Philip Russell, William Lally, Dan Gidley, and town selectmen
(the Hampton defendants); the Town of Seabrook, James Cawley, and
unknown Seabrook detectives and selectmen (the Seabrook
defendants); and Rockingham County.

## Standard of Review

Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The party seeking summary judgment must first demonstrate the absence of a genuine issue of material fact in the record. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). All reasonable inferences are resolved in favor of the nonmoving party. See Barreto-Rivera v. Medina-Vargas, 168 F.3d 42, 45 (1st Cir. 1999). A party opposing a properly supported motion for summary judgment must present competent evidence of record that shows a genuine issue for trial. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986); Torres v. E.I. Dupont De Nemours & Co., 219 F.3d 13, 18 (1st Cir. 2000). "[A]n issue is 'genuine' if the evidence presented is such that a reasonable jury could resolve the issue in favor of the nonmoving party and a 'material' fact is one that might affect the outcome of the suit under governing law." Fajardo Shopping Ctr. v. Sun Alliance Ins. Co., 167 F.3d 1, 7 (1st Cir. 1999).

## Background

Between 1990 and 1992, Steven Nowaczyk and his wife, Penny, operated the Copper Penny Restaurant in North Hampton, New Hampshire, where they leased property from Dean Stevens. On December 24, 1991, the Copper Penny was damaged by fire. Although the fire department incident report indicated that the fire originated from the careless disposal of smoking materials, a subsequent fire investigation by Fire Science Technologies, Inc. determined that the fire was most probably caused by an electrical malfunction.[2]

In April of 1993, Nowaczyk opened another restaurant, the Nifty Fifties Café. Defendant Raymond Desilets was involved in that business with Nowaczyk. Defendant Amy Keegan worked for Nowaczyk beginning in April of 1993, and Keegan and Nowaczyk began a personal relationship at the same time. The Café was destroyed by fire in December of 1993. The fire was determined

---

[2]Nowaczyk submits as exhibits three copies of fire incident reports that he claims show that the original fire incident report for the Copper Penny fire was altered to show a different cause for the fire. One of the submitted reports does not pertain to the fire at the Copper Penny. Counsel for the North Hampton defendants represents that the hand notations on another submitted copy of the report were made by Thomas Lambert of the North Hampton Fire Department and that an admission of that fact was provided to Nowaczyk. Counsel represents that the hand notations merely provide the information indicated by the numerical codes. Nowaczyk has provided no contrary evidence to show that the notations are material.

to be of suspicious origin, prompting further police investigation. The Nifty Fifties fire increased interest in a further investigation of the Copper Penny Restaurant fire.[3]

On January 28, 1994, Raymond and Margaret Desilets approached North Hampton police officer Robert Wharem and Sargent Brian Page, while they were eating breakfast at Wilbur's Countryside Restaurant. Raymond Desilets told the officers that he and Amy Keegan had given the FBI and the Hampton Police Department evidence about the Nifty Fifties fire and said that Nowaczyk had told him about trying to burn down the Copper Penny Restaurant. Desilets also said that Nowaczyk had been watching them and that they were staying in a motel to avoid Nowaczyk. Officer Wharem noted that the Desiletses both appeared to be frightened. Desilets said he would go to the police department at 11:00 that morning. Amy Keegan and the Desiletses gave statements that day.

The investigation of the Copper Penny Restaurant fire was assigned to North Hampton Police Patrol Officer Richard Sawyer. Because the physical evidence of the fire no longer existed,

---

[3]Nowaczyk includes as an exhibit a fire investigation report pertaining to the Copper Penny Restaurant fire by the North Hampton Fire Department, Lt. R. Bud O'Connor, Investigator. The signature line is dated November 26, 1992, but is not signed. The part of the report recounting Deputy Chief Tom Lambert's recollection of the Copper Penny fire is dated December 22, 1993.

Sawyer investigated by taking statements from witnesses. Between February 1 and 4, 1994, statements were taken from Raymond Desilets, Margaret Desilets, Amy Keegan, Kimberly Hillsgrove, Christopher Hillsgrove, Tricia Ziemba, and Dean Stevens. Amy Keegan, Raymond Desilets, Margaret Desilets, Tricia Ziemba, and Christopher Hillsgrove said that Nowaczyk told them that he intentionally caused the fire at the Copper Penny.[4] Keegan, Desilets, and Christopher Hillsgrove all reported that Nowaczyk told them that it was an electrical fire.[5]

Keegan and the Desiletses also gave statements about Nowaczyk's threatening behavior. Keegan said that Nowaczyk had threatened her with harm if she revealed what she knew about his activities.[6] She said that Nowaczyk proposed marriage to her at

---

[4]The portion of Kimberly Hillsgrove's statement that was submitted to the court does not include statements about the cause of the fire.

[5]Nowaczyk reportedly told Keegan that the fire started in the electrical panel, told Raymond Desilets that he tried to make it look like an electrical fire, and told Christopher Hillsgrove that he wired the office and left wires undone and smoldering.

[6]Specifically, Keegan said that Nowaczyk told her in October or November of 1993 that he would have her "raped and murdered" if she talked to the police. In January 1994 when Nowaczyk revealed to Keegan his involvement in the Nifty Fifties Café fire, Keegan said he asked her if she knew what would happen if she told what she knew and she said she would end up dead in a ditch. Nowaczyk agreed.

the end of January 1994, and she declined, saying that he was the last person she would trust. They then went for a ride in his car where Nowaczyk confessed his involvement in the restaurant fires and said he would do it again. Keegan was so frightened that she jumped out of the car but then let Nowaczyk drive her home.

Keegan moved in with the Desiletses in late January of 1994. Keegan told the police that Nowaczyk repeatedly called the Desiletses, drove his car to their home where she was staying, turned around and left, and when Keegan drove by a gas station where he was stopped, he followed her in his car. She said that she and the Desiletses stayed in a motel for two days because of their concerns for their safety. Margaret Desilets said that Nowaczyk often drove by their home to check on them and that he called and seemed threatening.

Raymond Desilets said that he called the North Hampton police when Nowaczyk drove into their yard and then left. After the police left, Penny Nowaczyk called and asked Raymond Desilets to meet them at a Pizza Hut restaurant, but he declined. He also said that he saw Steven Nowaczyk driving around in the Desiletses' end of town and by their house, and he presumed that Nowaczyk was watching their house and trying to contact Keegan. Raymond Desilets said that Nowaczyk told him that Keegan had made

6

it clear to him that she did not want to see Nowaczyk anymore. Desilets said that Keegan was frightened. Keegan and the Desiletses said that they knew of violent acts Nowaczyk had done or hired others to do for him.

On February 1, 1994, North Hampton Police Officer Richard Sawyer applied for a warrant to arrest Nowaczyk for stalking in violation of New Hampshire Revised Statute Annotated ("RSA") 633:3-a with a supporting affidavit and a complaint. The warrant issued the same day, and Nowaczyk was arrested on February 2, 1994. On February 4, 1994, Sawyer applied for a warrant to arrest Nowaczyk for arson of the Copper Penny Restaurant in violation of RSA 634:1, with a supporting affidavit and a complaint. The warrant issued, and Nowaczyk was arrested the same day.

The stalking charges were dismissed by nolle prosequi on March 10, 1994. Nowaczyk was tried on the charges related to arson of the Copper Penny Restaurant beginning on May 6, 1997. The trial ended in a mistrial, and the state dismissed the charges by nolle prosequi on July 1, 1997.

## Discussion

The defendants contend that because probable cause existed to arrest Nowaczyk on the stalking charge and to arrest and

prosecute him on the arson charges, they are entitled to summary judgment on his federal claims and state law claims of malicious prosecution, false arrest, false imprisonment, and abuse of process. Nowaczyk objects to summary judgment, arguing that probable cause was lacking for both charges.

With respect to the federal claim, probable cause to arrest exists "when the facts and circumstances within the police officers' knowledge and of which they had reasonably trustworthy information were sufficient to warrant a prudent person in believing that the defendant had committed or was committing an offense." Fletcher v. Town of Clinton, 196 F.3d 41, 53 (1st Cir. 1999) (internal quotation and alterations omitted). Probable cause to arrest may be based on less than a fifty percent likelihood that the suspect is guilty. See Samos Imex Corp. v. Nextel Communications, 194 F.3d 301, 303 (1st Cir. 1999). Similarly, under New Hampshire law, "'[p]robable cause to arrest exists when the arresting officer has knowledge and trustworthy information sufficient to warrant a person of reasonable caution and prudence in believing that the arrestee has committed an offense.'" Hartgers v. Town of Plaistow, 141 N.H. 253, 255 (1996) (quoting State v. Brown, 138 N.H. 407, 409 (1994)).

8

A.   Stalking Charges

Nowaczyk was arrested and charged with stalking in violation of RSA 633:3-a.  Under the applicable part of the statute, a person is guilty of stalking if he purposely, knowingly, or recklessly "appear[s] on more than one occasion for no legitimate purpose in proximity to the residence, place of employment, or other place where another person is found under circumstances that would cause a reasonable person to fear for his personal safety."[7]  RSA 633:3-a, I(d)(4) (Supp. 1994).  Officer Sawyer provided his affidavit in support of the application for an arrest warrant in which he summarized the pertinent information gleaned from the statements made to Officer Wharem and to him by Raymond and Margaret Desilets and Amy Keegan.

In particular, Sawyer stated in his affidavit that the Desiletses and Keegan talked to Officer Wharem on January 28, 1994, about Nowaczyk and the Copper Penny Restaurant fire and that he conducted audio-taped interviews with each of them on February 1, 1994.  Sawyer stated that Keegan told him that Nowaczyk threatened to have her raped and murdered, that she had

_____

[7]The complaint and arrest warrant cite RSA 633:3-a(4) which presumably refers to the stalking definition in RSA 633:3-a, I(d)(4) (Supp. 1994).  Inexplicably, the defendants cite RSA 633:3-a, I(d)(2), which is similar to (d)(4) except that it includes an intent element.

9

told Nowaczyk she wanted nothing to do with him, and that while she was staying with the Desiletses, he drove into the lot next door, and that three days later he followed her in her car. Sawyer stated that Raymond Desilets told him he made it clear to Nowaczyk he should not come to the Desiletses' home, that in the past week on three occasions he saw Nowaczyk circle around the trailer park where the Desiletses and Keegan were living and once drive in, turn around, and drive away, that in the past week Nowaczyk contacted Desilets several times seeking information about Keegan, and that Nowaczyk admitted going by the Desiletses' home. Sawyer stated that Margaret Desilets told him that she had also seen Nowaczyk in the trailer park area in the last week. The Desiletses both told Sawyer that Nowaczyk's conduct was causing Keegan constant fear for her safety.

Sawyer's affidavit demonstrates that he had knowledge of and information about circumstances that would justify a belief that Nowaczyk had appeared on more than one occasion in proximity to Keegan's residence (in the Desiletses' home) with no legitimate purpose and under circumstances that would cause a reasonable person to fear for her safety. The information provided by Keegan and the Desiletses appears to be reliable and credible. Therefore, on its face, the affidavit demonstrates probable cause

10

for Nowaczyk's arrest on the stalking charge.[8]

B.  Arson Charges

On February 4, 1994, Nowaczyk was charged with arson in violation of RSA 634:1 for starting a fire at the Copper Penny Restaurant and an arrest warrant issued on that charge.  "A person is guilty of arson if he knowingly starts a fire or causes an explosion which unlawfully damages the property of another." RSA 634:1 (1996).  Sawyer provided a supporting affidavit based on audio taped interviews with Amy Keegan, Raymond Desilets, Margaret Desilets, Tricia Ziemba, Kimberly Hillsgrove, and Christopher Hillsgrove and a statement to another officer made by Dean Stevens.  He stated that he conducted or participated in the audio taped interviews between February 1 and 4, 1994.

In his affidavit, Sawyer stated that Officer Wharem had spoken with Keegan and the Desiletses on January 28, 1994, about

_____

[8]Nowaczyk compares the affidavit submitted in his case to the evidence submitted in support of an arrest warrant in <u>Vlack v. Town of Rye</u>, 1999 WL 813973 (D.N.H. May 28, 1999), to show that probable cause did not exist in his case.  Probable cause in both the state and federal contexts is determined based on the totality of the circumstances presented in the supporting affidavit which may include hearsay.  <u>See</u> <u>Illinois v. Gates</u>, 462 U.S. 213, 238 (1983); <u>accord</u> <u>State v. Carroll</u>, 131 N.H. 179, 186 (1988).  Contrary to Nowaczyk's interpretation, the analysis in <u>Vlack</u> supports the existence of probable cause in his case. Nowaczyk's challenges to the veracity and reliability of the witnesses' statements is discussed <u>infra</u>.

the Copper Penny Restaurant fire and that Wharem told Sawyer about the conversations. Amy Keegan told Sawyer in her interview that during a conversation on December 30, 1993, Nowaczyk admitted setting the fire at the Copper Penny. Raymond Desilets told Sawyer that over the preceding four months he had had three or four conversations with Nowaczyk in which Nowaczyk said that he caused the fire and tried to make it look like an electrical fire. Margaret Desilets told him that Nowaczyk told her in early November of 1993 that he set the Copper Penny fire, and Tricia Ziemba told Sawyer that Nowacyzk told her the same thing in early October of 1993.

Sawyer also stated that he was present during an interview of Kimberly Hillsgrove when she said that Nowaczyk told her that he started the Copper Penny fire by doing something to the wiring so that it would smolder. Christopher Hillsgrove said during his interview that Nowaczyk told him in the spring of 1992 that he set the Copper Penny fire by undoing some wires and leaving them to smolder. Christopher Hillsgrove also said that Nowaczyk told him he put all of his and his wife's belongings in the basement of the Copper Penny before the fire so that he could collect insurance. Sawyer also reported in his affidavit that Detective James Giguere interviewed Dean Stevens, the owner of the property where Nowaczyk operated the Copper Penny, who said that Nowaczyk

12

was thousands of dollars behind on his rent at the time of the fire.

Sawyer's affidavit submitted in support of the warrant to arrest Nowaczyk for arson indicates he had reliable information about circumstances that would justify a belief that Nowaczyk knowingly started a fire at the Copper Penny Restaurant that damaged property owned by Dean Stevens. Therefore, the affidavit, on its face, appears to provide probable cause for the arrest warrant.

C.  Challenges to the Arrest Warrants

Nowaczyk contends that his arrests were not supported by probable cause because Sawyer omitted information from and misrepresented information in the affidavits, that Sawyer had reason to doubt the reliability of statements made by the Desiletses and Keegan, and that his affidavits, based on hearsay, were insufficient to support the arrest warrants.[9] Nowaczyk also contends that a more complete investigation would have uncovered other evidence that he had not committed either offense.

---

[9]To the extent that Sawyer, in his affidavit, attributed certain information to particular witnesses erroneously, the errors were not material because the same information was provided by other witnesses.

13

1.   Sufficiency of the affidavits.

An affidavit submitted in support of a warrant application is presumed to be valid.  See Franks v. Delaware, 438 U.S. 154, 171 (1978); United States v. Grant, 218 F.3d 72, 77 (1st Cir. 2000); State v. Valenzuela, 130 N.H. 175, 190-91 (1987).  The presumption may be overcome only by showing that the affidavit "contains either (1) a false statement made knowingly and intentionally, or with reckless disregard for the truth, or (2) technically accurate statements that have been rendered misleading by material omissions."  Grant, 218 F.3d at 77 (internal quotations and citations omitted); see also State v. Jaroma, 137 N.H. 143, 147 (1993); State v. Wilkinson, 136 N.H. 170, 174 (1992).  The misrepresentation or omission in the affidavit must be material so that if the misrepresentation is corrected or the omitted information is added to the affidavit, probable cause would no longer exist.  See United States v. Scalia, 993 F.2d 984, 987 (1st Cir. 1993); Valenzuela, 130 N.H. at 190-91.

Nowaczyk contends that Sawyer omitted information from his affidavit submitted in support of the arrest warrant for stalking.  In particular, Nowaczyk contends that Sawyer knew that his wife, Penny, was with him on several occasions when he drove to the Desiletses' home, which was the reason that they left

14

without stopping when they saw Keegan's car.  He also contends that he and his wife were expected by the Desiletses and that they intended to see Raymond Desilets about business matters.  He also argues that the affidavit improperly omitted information about his personal and professional relationship with Keegan and the Desiletses.

Contrary to Nowaczyk's representations about his intentions, there is evidence in the record only to support the fact that his wife was with him on one occasion when he drove into the yard and then left and telephoned the Desiletses.  He offers no explanation for the times he repeatedly drove to the mobile home park, apparently checking on the Desiletses' home, called seeking information about Keegan, or for the reported threat he made against Keegan.  If Sawyer's affidavit had included information that Penny Nowaczyk accompanied her husband on one trip to the Desiletses' home, it would still support a reasonable belief that he was there for no legitimate purpose and that Keegan had a reasonable concern for her safety.

Information about Nowaczyk's relationship with Keegan, that they had had a romantic relationship recently terminated by Keegan and that the relationship began when Keegan worked with Nowaczyk, would have enhanced rather than undermined the grounds for probable cause.  Information about Nowaczyk's relationships

15

with the Desiletses would also have shown additional bases for the information that they provided to police.

Nowaczyk challenges the affidavit submitted in support of the arson arrest warrant on the grounds that it omitted information from the original fire incident report and the Fire Science Technologies report and misrepresented when officials began their criminal investigation into the fire. In particular, Nowaczyk contends that probable cause would be negated by the fire investigation reports, which Nowaczyk interprets to report that the fire was not of suspicious origin.

The initial incident report indicates through a numerical code the form of heat ignition, which apparently means that the heat that ignited the fire was from smoking materials. The report does not say that the fire was not suspicious. The investigation report by Fire Science Technologies, Inc. states that "according to municipal authorities this fire was most probably due to an electrical malfunction and our inspection of the premises failed to disclose anything other than this." Pl. Ex. C at 5.

Those reports do not undercut the witnesses' statements that Nowaczyk told them he started the fire in a way to make it look like an electrical fire. Despite the initial report about smoking materials, subsequent investigations revealed that the

16

fire had started from an electrical malfunction, which is consistent with the witnesses' statements about Nowaczyk's admissions. Therefore, even if the fire reports' findings had been included in Sawyer's affidavit, probable cause would have existed to support his arrest on the arson charge. Whether the criminal investigation into the Copper Penny fire began before January 28, 1994, or not, is immaterial.

### 2. Reliability of witnesses' statements.

Nowaczyk argues that the witnesses' statements were not reliable and that Sawyer intentionally omitted information from the affidavits that would have demonstrated their unreliability. To affect probable cause, omitted information pertaining to the reliability of the information submitted in support of probable cause must undercut the existence of probable cause. See Lallemand v. Univ. of R.I., 9 F.3d 214, 216 (1st Cir. 1993). Information provided by a victim is generally considered to be reliable. See B.C.R. Transport Co., Inc. v. Fontaine, 727 F.2d 7, 9 (1st Cir. 1984).

Nowaczyk contends that Sawyer demonstrated that he doubted the truth of the Desiletses' and Keegan's statements because he told each of them that he knew in the past that Nowaczyk had witnesses make statements against him only to get information

17

about police investigations and then the witnesses recanted their statements. The transcript shows, however, that Sawyer asked the witnesses whether they were trying to get information for Nowaczyk or whether the statement was true. Each witness affirmed that his or her statement was true. Therefore, Sawyer allayed his concern about their credibility. Other unreliable statements by witnesses do not undermine the credibility of Keegan and the Desiletses or undercut the sufficiency of the affidavit to show probable cause.

To the extent that Nowaczyk contests Sawyer's reliance on Keegan's credibility based on Keegan's written account of her relationship with Nowaczyk and related events, which she titled "Precious Silence," Nowaczyk has not shown that Sawyer was aware of Keegan's account in early February of 1994. Further, the account generally corroborates Keegan's statements. Nowaczyk also makes unsubstantiated allegations that the North Hampton police suspected Raymond Desilets of criminal activity and that Amy Keegan had previously provided the police with questionable information. In the absence of record support, those allegations are not sufficient to oppose summary judgment. In summary, Nowaczyk has not demonstrated a trialworthy issue as to whether issues of witnesses' reliability and credibility would undercut the probable cause demonstrated in Sawyer's affidavits.

3. Sufficiency of the investigation.

Nowaczyk also suggests that the police should have investigated further before charging and arresting him. Once a police officer has sufficient credible information to support a finding of probable cause, no further investigation is constitutionally necessary. See, e.g., Borlawsky v. Town of Windham, 115 F. Supp. 2d 27, 29-30 (D. Me. 2000) (citing cases).

D. Probable Cause to Prosecute on the Arson Charge

Nowaczyk challenges the existence of probable cause to prosecute him on the arson charge, contending that the defendants (or some of them) withheld the initial fire incident report from the prosecutors.[10] Nowaczyk offers no evidence that any of the defendants withheld the initial fire incident report from the prosecutors. In addition, as discussed above, the report does not undercut probable cause that he committed arson based on the witnesses' statements. The fact that the prosecutors decided to dismiss the arson charge after a mistrial does not negate the existence of probable cause to prosecute. See Roche v. John

---

[10]Although Nowaczyk also says that the defendants "purposefully concealed and misrepresented material facts to the county attorney, which may have influenced his decisions to prosecute the plaintiff for the arson allegation," he does not explain what facts were concealed or misrepresented.

19

Hancock Mut. Life Ins. Co., 81 F.3d 249, 255 (1st Cir. 1996); Stock v. Byers, 120 N.H. 844, 846 (1980). Therefore, no trialworthy issue remains as to the existence of probable cause to prosecute.

E. Summary Judgment

Nowaczyk's federal claims in Counts XIV, XV, XVI, XVII, and XVIII arise from allegations that he was arrested on the stalking and arson charges and prosecuted for arson in violation of the Fourth Amendment. To succeed on those claims, Nowaczyk would have to prove the absence of probable cause. See, e.g., Britton v. Maloney, 196 F.3d 24, 28-29 (1st Cir. 1999); Meehan v. Town of Plymouth, 167 F.3d 85, 89 (1st Cir. 1999); Calero-Colon v. Betancourt-Lebron, 68 F.3d 1, 3-4 (1st Cir. 1995). Based on the record presented for summary judgment, no genuine issue remains as to the existence of probable cause to arrest Nowaczyk on charges of stalking and arson and to prosecute him on the arson charge. Therefore, the defendants are entitled to summary judgment with respect to all of Nowaczyk's remaining federal claims.[11]

_____

[11]Since a civil rights conspiracy claim requires proof of a constitutional deprivation, the defendants are entitled to summary judgment on Nowaczyk's conspiracy claim. See Brennan v. Hendrigan, 888 F.2d 189, 195 (1st Cir. 1989). For the same

Nowaczyk's state law claims of false arrest, false imprisonment, and malicious prosecution also require proof of the absence of probable cause.  See Hartgers, 141 N.H. at 255; ERG, Inc. v. Barnes, 137 N.H. 186, 190 (1993); Hickox v. J.B. Morin Agency, Inc., 110 N.H. 438, 442 (1970).  The defendants are therefore also entitled to summary judgment as to those claims.  To the extent that Nowaczyk's negligent hiring, training, and supervision claims are premised on his federal claims for his state law claims of false arrest, false imprisonment, or malicious prosecution, the defendants are also entitled to summary judgment as to those claims.

Nowaczyk's abuse of process claim, however, does not depend on an absence of probable cause.  See Cabletron Sys., Inc. v. Miller, 140 N.H. 55, 57-58 (1995); Long v. Long, 136 N.H. 25, 29 (1992); see also Allred v. Moore & Peterson, 117 F.3d 278, 284-85 (5th Cir. 1997); Kaminske v. Wis. Cent. Ltd., 102 F. Supp. 2d 1066, 1077 (E.D. Wis. 2000); Shiner v. Moriarty, 706 A.2d 1228, 1236 (Pa. Super. Ct. 1998).  Therefore summary judgment is denied

_____

reason, Nowczyk's civil rights conspiracy claim in Count XIV brought against the Desilets is also dismissed.  To the extent Nowaczyk may have intended to assert a constitutional claim based on the recording of his conversation with Raymond Desilets, he has failed to state such a claim.  See, e.g., Illinois v. Perkins, 496 U.S. 292, 299 (1990); United States v. White, 401 U.S. 745, 749-50 (1971); United States v. Upton, 502 F. Supp. 1193, 1195 (D.N.H. 1980).

as to the abuse of process claim.

The claims that remain are state law claims of invasion of privacy, abuse of process, and defamation brought against the North Hampton, Hampton, Seabrook, and individual defendants. To the extent Nowaczyk intended state law claims of negligent hiring, training and supervision arising from abuse of process, invasion of privacy, or defamation, those claims also survive summary judgment. Since all of the federal claims have now been terminated, the court declines to exercise supplemental jurisdiction with respect to the remaining state law claims. See 28 U.S.C.A. § 1367(c)(3); Day v. Mass. Air Nat'l Guard, 167 F.3d 678, 686 (1st Cir. 1999).


Conclusion

For the foregoing reasons, the defendants' motions for partial summary judgment (documents no. 188, 189, 190, and 191) are granted as to all of the plaintiff's federal claims and the state law claims of false arrest, false imprisonment, and malicious prosecution. The motions are also granted to the extent the plaintiff's negligent hiring, training, and supervision claims were based on the federal claims and on the state claims of false arrest, false imprisonment, or malicious prosecution. The motions are otherwise denied. The civil rights

22

conspiracy claim against the Desiletses is dismissed.  The court declines supplemental jurisdiction with respect to the remaining state law claims, which are dismissed without prejudice.

Default was entered as to claims arising from the Copper Penny fire charges against defendant Amy Keegan.  The plaintiff shall submit an application for default judgment against Amy Keegan, pursuant to Federal Rule of Civil Procedure 55(b)(2), on or before **April 6, 2001.**

SO ORDERED.

_____
Joseph A. DiClerico, Jr.
District Judge

March 15, 2001

cc:  Steven J. Nowaczyk, pro se
     John J. Ryan, Esquire
     John P. Fagan, Esquire
     John A. Lassey, Esquire
     John P. Sherman, Esquire
     Raymond Desilets, pro se
     Margaret Desilets, pro se
     Amy Keegan, pro se

23